**In the Matter of The CROPPER COMPANY, INC., Debtor.**

**Bankruptcy No. 83–50305–Mac.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Dec. 9, 1983.

Robert O. House, Edward S. Sell, III, Sell & Melton, Macon, Ga., for debtor.

Jerry L. Sims, Lefkoff, Pike & Sims, P.C., Atlanta, Ga., for Commercial Credit Business Loans, Inc.

MEMORANDUM OPINION IN SUPPORT
OF COURT'S ORDER DATED
NOVEMBER 10, 1983

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

## STATEMENT OF THE CASE

On March 17, 1983, The Cropper Company, Inc., the debtor in possession, filed its petition for relief under Chapter 11 of the Bankruptcy Code. On the same day, the debtor in possession filed an "Application for Authorization to Use Cash Collateral." The application came on for hearing, and by order dated March 31, 1983, the Court denied the application of the debtor in possession. On March 31, 1983, the debtor in possession filed an "Application for Reconsideration" of the Court's order denying the use of cash collateral. The application for reconsideration offered to the lienholder, Commercial Credit Business Loans, Inc. (hereinafter Commercial Credit), adequate protection in the form of a lien on real estate with an equity value of $129,000.00. The Court then authorized the use of the cash collateral.

On October 3, 1983, Commercial Credit filed a "Motion for Order Prohibiting the Use of Cash Collateral." The matter came on for hearing on October 4, 1983. The Court heard evidence and ordered the matter continued until November 4, 1983. At the October 4, 1983, hearing, the debtor in possession showed signs of progress, and the Court concluded that the adequate protection issue could be resolved best after a review of the October 1983 sales and performance figures of the debtor in possession. On November 4, 1983, the matter came on for hearing, and on the basis of the evidence presented, the Court stopped the hearing pending a determination on whether the law firm of Sell & Melton of Macon, Georgia, the court appointed attorney for the debtor in possession,[1] should be disqualified from representing the debtor in possession. On November 7, 1983, Sell & Melton filed with the Court a brief in support of its position that it should not be disqualified. A hearing was held on the issue of disqualification on November 8, 1983, at which time the Court revoked the authority of the debtor in possession to use cash collateral pending further order of the Court.

On November 10, 1983, the Court published in open court its preliminary findings of fact and conclusions of law and, based upon those findings and conclusions, the Court found the firm of Sell & Melton disqualified to represent the debtor in possession. The Court will now publish its final findings of fact and conclusions of law in support of its November 10, 1983, order, which disqualified the firm of Sell & Melton.

## FINDINGS OF FACT

On March 18, 1983, the debtor in possession filed an "Application to Employ Attorneys" in which the debtor in possession requested that it be allowed to employ the law firm of Sell & Melton to represent the debtor in possession. In support of the application, Mr. Robert O. House, a partner in the firm of Sell & Melton, submitted an affidavit that listed the partners and associates of Sell & Melton. Listed as an associate of the firm is Mr. Rick W. Griffin. Mr. House further stated in his affidavit that neither Sell & Melton nor any attorney employed by the firm holds or represents an interest adverse to the debtor in possession. On March 18, 1983, the Court authorized the employment of Sell & Melton.

Mr. Griffin owns thirty-eight percent of the stock of Starley Brothers Furniture and is the secretary of that corporation. Starley Brothers rents and sells furniture and appliances. Starley Brothers' rentals are on a "rent to own" basis.

---

1. R.Bankr.P. 2014(b) provides:
   If, under the Code and this rule, a law partnership or corporation is employed as an attorney, or an accounting partnership or corporation is employed as an accountant, or if a named attorney or accountant is employed, any partner, member, or regular associate of the partnership, corporation or individual may act as attorney or accountant so employed, without further order of the court.

During the middle part of October 1983 (which was during the period of review set by the Court before its ruling on Commercial Credit's motion), the debtor in possession negotiated an agreement whereby the debtor in possession was to sell various appliances [2] to Starley Brothers. The debtor in possession was to purchase the appliances from Hughes Supply Company of Macon, Georgia and pay cash for them. Then, the debtor in possession was to sell the appliances to Starley Brothers on credit. Under the agreement between the debtor in possession and Starley Brothers, the net amount of the invoices of the debtor in possession to Starley Brothers was due ninety days from the date of the invoices. Pursuant to the agreement, on October 28, 1983 Starley Brothers sent to the debtor in possession a purchase order for appliances in the approximate amount of $30,000.00. On October 31, 1983, the debtor in possession sent Starley Brothers an invoice evidencing the $30,000.00 purchase.[3] The debtor in possession retained a security interest in the appliances and filed a financing statement. The debtor in possession advises that it has agreed to supply Starley Brothers on an "as needed basis," which may result in daily sales to Starley Brothers. The debtor in possession further advises that it expects considerable dealings with Starley Brothers in the future.

Sell & Melton admittedly represented Starley Brothers at one time, but advises the Court that it no longer intends to represent Starley Brothers.

The statement from Sell & Melton is that a member of Sell & Melton initiated the contact between the debtor in possession and Starley Brothers that resulted in the agreement of the debtor in possession to sell appliances to Starley Brothers. Sell & Melton admits in its brief:

Sell & Melton does not make and does not purport to make business decisions for the Debtor-in-Possession, but an attorney in Sell & Melton saw a potential customer for the Debtor-in-Possession through his knowledge and understanding of the business of Starley Brothers which his law firm has in the past represented in matters not related to this Chapter 11 case. Counsel for the Debtor-in-Possession would have been remiss and would not have acted in the best interests of the estate of this Debtor had it failed to bring this business opportunity to the attention of the Debtor-in-Possession. Having suggested the opportunity to the Debtor-in-Possession, it was the management of the Debtor-in-Possession that made its own independent determination that a business arrangement with Starley Brothers would be in the best financial interests of the Debtor-in-Possession.

## CONCLUSIONS OF LAW

Section 327(a) of the Bankruptcy Code, 11 U.S.C.A. § 327(a) (West 1979), provides in pertinent part:

[T]he trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

A debtor in possession has virtually all of the rights, powers, and duties of a trustee. 11 U.S.C.A. § 1107 (West 1979). A debtor in possession stands "in the shoes of a trustee in every way." S.Rep. No. 989, 95th Cong., 2d Sess. 116, *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5902. Therefore, the attorney for the debtor in possession must meet the requirements of section 327(a). *In re Seatrain Lines, Inc.,* 13 B.R.

**2.** The debtor in possession primarily sells hardware and agricultural goods on a wholesale basis. An officer of the debtor in possession testified that the decision to sell appliances was an effort to diversify the product lines of the debtor in possession in order to produce additional sales.

**3.** This made the debtor in possession's total October 1983 sales approximately $140,000.00. The debtor in possession's September sales were approximately $90,000.00, and it had projected sales of $130,000.00 for October.

980, 981, 4 Collier Bankr.Cas.2d 1558, 1559 (Bkrtcy.S.D.N.Y.1981).

■ Under section 327(a), a two-prong test must be met. First, the attorney for the trustee must hold no interest adverse to the bankruptcy estate, and, second, the attorney for the trustee must be a disinterested person. *In re Leisure Dynamics, Inc.*, 33 B.R. 121, 122 (D.C.D.Minn.1983).

The term "disinterested person" is defined in section 101(13), 11 U.S.C.A. § 101(13) (West 1979), of the Bankruptcy Code as follows:

(13) "disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

■ The definition in section 101(13), which attempts to specify those individuals that are not disinterested, is not the best example of clear draftmanship. In the Court's view, the statutory listing is illustrative. Section 101(13) is a guideline for the Court to follow in exercising its sound judicial discretion to "insure that persons employed shall have the essential character

of independence and disinterestedness which is required." *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 333 (D.C.E.D. Pa.1982).

Collier on Bankruptcy explains section 101(13) as follows:

[Section 101(13)] appears broad enough to include anyone who in the *slightest degree* might have some interest or relationship that would color the independent and impartial attitude required by the Code.... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties. The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration....

2 Collier on Bankruptcy ¶ 327.03[3][f] (15th ed. 1983) (footnotes omitted) (emphasis added). Collier on Bankruptcy thus concludes that the standards for disinterestedness are to be "rigidly applied." 3 Collier on Bankruptcy ¶ 327.03[3][a].

In *In re Philadelphia Athletic Club, Inc.*, 20 B.R. at 334, the district court noted:

It is clear, therefore, that the definition of disinterested person in paragraph (13) promotes the policy that as a general principle professionals engaged in the conduct of a bankruptcy case should be free of the *slightest personal interest* which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.

(quoting 1 Collier Bankruptcy Manual § 101.13 (1981)) (emphasis added).

In considering the other prong of section 327(a), the Court notes that a professional engaged by a debtor in possession may not hold or represent an interest adverse to the bankruptcy estate. The standards for the employment of professional persons are strict, but Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process. Congress, in section 328(c), 11 U.S.C.A.

§ 328(c) (West 1979), authorized the bankruptcy courts to deny compensation to a professional person that is found to not be disinterested or that holds an interest adverse to the bankruptcy estate. Also, a trustee may be denied compensation for failing to make a diligent inquiry before hiring a professional that is not disinterested. 11 U.S.C.A. § 326(d) (West 1979). Furthermore, Congress has provided for certain criminal penalties in the event that an officer of the bankruptcy court takes certain positions adverse to the bankruptcy estate.[4] Congress recognized that such professional persons make and influence decisions concerning great sums of money, and often these individuals are not subject to close supervision. Congress has sought to avoid any potential conflict that may influence their decisions.

■ Before the Court is the question of whether Sell & Melton should be disqualified because the debtor in possession is presently selling goods to Starley Brothers, a corporation in which an associate of Sell & Melton holds thirty-eight percent of the outstanding stock. After carefully considering the evidence and the applicable law, the Court is of the opinion that Mr. Griffin's interest in Starley Brothers is adverse to that of the debtor in possession. Furthermore, the transaction between the debtor in possession and Starley Brothers may potentially result in harm to the bankruptcy estate. In this case, Starley Brothers is transacting business with the bankruptcy estate, and, in fact, the debtor in possession is extending credit to Starley Brothers. It can be seen easily that the extension of credit could have an adverse effect on the bankruptcy estate. This is especially apparent when the debtor in possession is extending credit to Starley Brothers, but having to pay cash for the goods that it is selling to Starley Brothers.

Sell & Melton argues that it does not hold or represent an interest adverse to the bankruptcy estate because the business transaction between the debtor in possession and Starley Brothers is "mutually beneficial" to both the debtor in possession and Starley Brothers. The Court, however, cannot agree. In *Meredith v. Thralls,* 144 F.2d 473 (2d Cir.), *cert. denied,* 323 U.S. 758, 65 S.Ct. 92, 89 L.Ed. 607 (1944), Mr. Thralls was an employee of Reconstruction Finance Corporation. Reconstruction Finance Corporation owned, through another corporation, all of the stock of the Chapter X debtor. Mr. Thralls was appointed a trustee of the debtor, and the Second Circuit found him not "disinterested" under sections 156[5] and 158[6] of the Bankruptcy Act. In so holding, the Second Circuit noted:

---

4. 18 U.S.C.A. § 154 (West 1969 & Supp.1983) provides:

> Whoever, being a custodian, trustee, marshal, or other officer of the court, knowingly purchases, directly or indirectly, any property of the estate of which he is such officer in a case under title 11; or
>
> . . . .
>
> Shall be fined not more than $500, and shall forfeit his office, which shall thereupon become vacant.

5. Law of July 1, 1898, ch. 541, § 156, as added June 22, 1938, ch. 575, § 1, 52 Stat. 888 (repealed 1979). Under section 156 of the Bankruptcy Act a trustee was required to be "disinterested" if the debts of a debtor equaled or exceeded $250,000.00. The standards of disinterestedness for the appointment of a trustee under the Bankruptcy Act were essentially the same as that for the appointment of an attorney for the trustee. 6 Collier on Bankruptcy ¶ 7.06 (14th ed. 1978).

6. Law of July 1, 1898, ch. 541, § 158, as added June 22, 1938, ch. 575, § 1, 52 Stat. 888 (repealed 1979), provided:

> A person shall not be deemed disinterested, for the purposes of sections 556 and 557 of this title, if—
>
> (1) he is a creditor or stockholder of the debtor; or
>
> (2) he is or was an underwriter of any of the outstanding securities of the debtor or within five years prior to the date of the filing of the petition was the underwriter of any securities of the debtor; or
>
> (3) he is, or was within two years prior to the date of the filing of the petition, a director, officer, or employee of the debtor or any such underwriter, or an attorney for the debtor or such underwriter; or
>
> (4) it appears that he has, by reason of any other direct or indirect relationship to, connection with, or interest in the debtor or such underwriter, or for any reason an interest materially adverse to the interests of any class of creditors or stockholders.

It also appears that the debtor has had and is likely to continue to have business dealings with Prudence Bonds Corporation and other units of the so-called Prudence group of companies, in all of which the Reconstruction Finance Corporation is heavily interested. As the representative of the latter and as additional trustee of the debtor Mr. Thralls will necessarily be under a cross-fire of conflicting loyalties in any such transaction. . . . We are of opinion that the appointment was unauthorized.

*Id.* at 475. *See also* ABA Code of Professional Responsibility DR 5–101(A).

It is apparent to the Court that even when business transactions are "mutually beneficial" to both sides, such transactions involve adverse interests. In other words, a business transaction need not ripen into an actual dispute to have adverse interests involved. In the case at bar, the buyer, in which Mr. Griffin has an ownership interest, desires to purchase appliances at the lowest price. The debtor in possession, on the other hand, wishes to realize as much profit as it can reasonably make from the sale of the appliances. By the very nature of a business transaction, each party thereto holds an interest adverse to the other. In the future, any number of disputes may arise, including, for example, defective goods or the terms of payment. In the Court's view, either prong of section 327(a) requires an attorney employed by a debtor in possession to be free of such actual and potential conflicts of interest. *See In re Realty Associates Securities Corp.,* 56 F.Supp. 1007 (E.D.N.Y.1944); *Nolan v. Judicial Council of the Third Circuit,* 346 F.Supp. 500 (D.N.J.1972), *aff'd,* 481 F.2d 41 (3d Cir.), *cert. denied,* 414 U.S. 880, 94 S.Ct. 68, 38 L.Ed.2d 125 (1973); 2 Collier on Bankruptcy ¶ 327.03[3][f] (15th ed. 1983).

The testimony reveals that the debtor in possession has entered into a substantial business transaction with Starley Brothers and the debtor in possession expects considerable dealings with Starley Brothers in the future. Under these circumstances, the Court must conclude that Mr. Griffin is subject to conflicting loyalties. Mr. Griffin owns thirty-eight percent of the stock in Starley Brothers, with which the debtor in possession is doing business. Starley Brothers is a closely held corporation and Mr. Griffin is a corporate officer. In section 101(13)(A) of the Bankruptcy Code, 11 U.S.C.A. § 101(13)(A) (West 1979), in which Congress defined "disinterested person," Congress made it clear that equity security holders of a debtor are conclusively not disinterested. "It is presumed by the statute that a person who is such a . . . equity security holder . . . is incapable of the impartial judgment required of a professional in the conduct of a case under the Code." 2 Collier on Bankruptcy ¶ 327.03[3][b] (15th ed. 1983) (footnote omitted). The same logic applies to the case at bar. The Court does not believe that Mr. Griffin or another person in his situation could divorce himself from his financial interest in Starley Brothers. It is the aim of the Bankruptcy Code to prevent an attorney from being forced to choose between his own financial interests and the interests of a debtor in possession.

█ The Court also may disqualify a law firm under the ABA Code of Professional Responsibility. The ABA Code of Professional Responsibility governs the conduct of lawyers practicing before the federal courts, and it is a guideline for the federal courts to follow in the regulation of their affairs. *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172 n. 15 (5th Cir.1979); *Woods v. Covington County Bank,* 537 F.2d 804, 810 (5th Cir.1976). The ABA Code of Professional Responsibility likewise governs the disqualification of attorneys in bankruptcy proceedings. *Kraft, Inc. v. Alton Box Board Co. (In re Corrugated Container Antitrust Litigation),* 659 F.2d 1341, 1349 (5th Cir. Oct. 29, 1981) (Unit A); *In re Philadelphia Athletic Club, Inc.,* 20 B.R. at 335.

█ Canon 9 of the ABA Code of Professional Responsibility provides that a lawyer shall avoid "even the appearance of professional impropriety." It is not sufficient that an attorney or trustee actually be disinterested; the appearance of being dis-

interested also must be preserved. *In re Philadelphia Athletic Club, Inc.,* 20 B.R. at 335; *In re Perry, Adams & Lewis Securities, Inc.,* 5 B.R. 63, 64 (Bkrtcy.W.D.Mo. 1980). In order for the Court to disqualify Sell & Melton under Canon 9, there must be a showing that there is a "reasonable possibility of the occurrence of 'specifically identifiable appearance of improper conduct,' and that the 'likelihood of public suspicion or obloquy outweights the social interest' in obtaining counsel of one's choice." *Kraft, Inc. v. Alton Box Board Co.,* 659 F.2d at 1345. In regard to the first prong of the test, the Court should "view the conduct as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted." *In re Philadelphia Athletic Club, Inc.,* 20 B.R. at 335.

In this case, the Court finds a reasonable possibility of the appearance of improper conduct. A reasonable citizen would view Mr. Griffin's ownership interest in Starley Brothers to be adverse to the debtor in possession. One would reasonably expect that Mr. Griffin would attempt to protect and further his own financial interests. This would cast doubt on the fairness of the bankruptcy proceedings and undermine the American judicial system.

The Court realizes that other interests must be considered. Namely, the policy of retaining counsel of one's own choice. *Brennan's,* 590 F.2d at 172. Also, Sell & Melton has represented the debtor in possession for some time and is familiar with the case. Disqualification would force the debtor in possession to hire new counsel that would have to familiarize himself with the case in a limited amount of time. In this case, however, the Court is convinced that the interests of maintaining public confidence in the bankruptcy system must prevail. *See Kraft, Inc. v. Alton Box Board, Inc.,* 659 F.2d at 1348–49; *In re Philadelphia Athletic Club, Inc.,* 20 B.R. at 335.

The Court thus concludes that Mr. Griffin is disqualified in this bankruptcy case. Even though Mr. Griffin is an associate of Sell & Melton rather than a partner, his disqualification results in the disqualification of all members of that law firm. *See* ABA Code of Professional Responsibility DR 5–105(D); *Kraft, Inc. v. Alton Box Co., Inc.,* 659 F.2d at 1346–47; *United States v. Kitchin,* 592 F.2d 900, 904 (5th Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979); *American Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1128–29 (5th Cir.1971); *In re Leisure Dynamics, Inc.,* 33 B.R. at 122–23; *In re Philadelphia Athletic Club, Inc.,* 20 B.R. at 338 n. 11; *Pure in Heart Baptist Church v. Fulton (In re Fulton),* 3 B.R. 600, 603 (Bkrtcy.E.D.Mich. 1980).[7]

The Court need not pass upon whether the law firm for a debtor in possession is disqualified anytime a member of that firm owns stock in an entity that does business with the debtor in possession. Sell & Melton has posed certain hypothetical cases in that regard. The question may be one of degree rather than the application of a rigid rule. Here, Mr. Griffin is an associate of Sell & Melton. The law firm consists of twelve partners and three associates. Mr. Griffin owns thirty-eight percent and is an officer of a closely held corporation that is doing business with the debtor in possession. That corporation has already entered into a $30,000.00 transaction with the debtor in possession and similar transactions are expected. An officer of the debtor in possession testified that the debtor in possession will supply Starley Brothers with appliances on a daily basis. Even if the test is one of degree, under these circumstances Sell & Melton's representation of the debtor in possession is improper.

The Court notes finally that it does not question the character and integrity of Mr. Griffin or the other attorneys of Sell & Melton. Rather, the Court holds that Sell & Melton's representation of the debtor in possession does not meet the stringent tests

---

7.  *See also* R.Bankr.P. 2014(b).

of the Bankruptcy Code and the ABA Code of Professional Responsibility.[8]

Having determined that Sell & Melton is disqualified, the Court must give direction to Commercial Credit's "Motion for Order Prohibiting the Use of Cash Collateral."

The Court having previously authorized the use of cash collateral, Commercial Credit's motion is based upon 11 U.S.C.A. § 363(e) (West 1979), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

The debtor in possession stands in the shoes of the trustee, 11 U.S.C.A. § 1107 (West 1979), and when a secured creditor moves the court to prohibit the use of cash collateral, the burden is upon the debtor in possession to demonstrate that the secured creditor is adequately protected. In section 363, Congress recognized that cash collateral is a unique form of collateral that requires special protection. Cash collateral is the most likely form of collateral to be consumed in the reorganization process. Also, cash collateral is subject to change on a daily basis. Therefore, after the court authorizes the use of cash collateral, the secured party with an interest in the cash collateral is entitled to file at any time a motion under section 363(e), and the court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C.A. § 363(e) (West 1979).

Before the Court may authorize the use of cash collateral, the debtor in possession must sustain the burden of proving that the entity holding an interest in the cash collateral is adequately protected.

In this case, the Court must conclude that the debtor in possession has been unable to sustain its burden to show that Commercial Credit is adequately protected. Because of the conduct of the debtor in possession and its attorney, the Court is forced to disqualify the law firm of Sell & Melton. To allow the debtor in possession to continue to use cash collateral without counsel to advise it would, in the Court's opinion, violate the special protection afforded to cash collateral by the Bankruptcy Code.

The Court also notes that Commercial Credit came to court prepared to litigate the issue of adequate protection. It may have succeeded; the Court cannot at this time tell. Commercial Credit should not have to risk a depletion in its collateral as a result of the conduct of the debtor in possession and its attorney. If the debtor in possession wishes to use cash collateral, it must employ other counsel and move the Court for authority to use the cash collateral pursuant to 11 U.S.C.A. § 363(c)(2) (West 1979).

In closing, the Court is compelled to note that while it need not decide the issue, the Court does express concern as to whether the debtor in possession's transaction with Starley Brothers was in the ordinary course of business of the debtor in possession. If it was not, then the requirements of 11 U.S.C.A. § 363(b) (West 1979) should have been met.

This opinion is entered this 9th day of December, 1983, as final findings of fact and conclusions of law in support of this Court's order dated the 10th day of November, 1983.

---

**8.** At the November 8, 1983, hearing, Sell & Melton disclosed several other possible conflicts of interest with the debtor in possession. Because of the Court's decision to disqualify Sell & Melton on the basis of Mr. Griffin's ownership interest in Starley Brothers, the Court need not reach those possible conflicts of interest.