In re **ANVER CORPORATION, Debtor.**

Bankruptcy No. 84–00337–HL.

United States Bankruptcy Court,
D. Massachusetts.

July 11, 1984.

---

**2.** *In re Wadsworth Building Components, Inc.,*    711 F.2d 122, 8 C.B.C.2d 1166 (9th Cir.1983).

Joseph F. Ryan, Brown, Rudnick, Freed & Gesmer, Boston, Mass., proposed counsel for debtor.

## MEMORANDUM ON DISQUALIFICATION OF DEBTOR'S COUNSEL

HAROLD LAVIEN, Bankruptcy Judge.

This matter arose from the application of Anver Corporation (the "debtor") for employment of counsel during the administration of its Chapter 11 case. Specifically, counsel's firm is debtor's pre-filing counsel and is also a creditor for pre-filing services, and a partner is an equity holder of approximately one per cent, and the secretary/clerk of the debtor, all of which appear in conflict with the requisites of 11 U.S.C. § 327(a), requiring counsel to be a disinterested party without an adverse interest.

The simplest analysis of this matter is that based upon the Bankruptcy Code. 11 U.S.C. § 101(13)(A) defines a disinterested party as one who "is not a creditor, an equity security holder, or an insider." 11 U.S.C. § 101(25)(B)(ii) includes as an insider one who is officer of a corporation. Moreover, 11 U.S.C. § 101(13)(D) defines a disinterested person as one who "is not and was not, within two years before the date of filing the petition, a director, *officer,* or employee of the debtor." (emphasis added). 11 U.S.C. § 327 dictates that the bankruptcy court only approve debtor's choice of counsel if counsel does "not hold or represent an interest adverse to the estate and ... (is) *disinterested.*" (emphasis added).

The Court notes, as did counsel, that 11 U.S.C. § 1107(b) does not disqualify a party "solely because of such person's employment by or representation of the debtor...." However, if the Court were to disqualify counsel, it would not be "solely" because of his prior representation. As one court noted:

> [Counsel] argues nevertheless that Section 1107(b) removes the absolute bar to employment of a person who is not disinterested when the person represented the debtor before the commencement of the case. This argument is equally unpersuasive; indeed, it is refuted by the unambiguous language of the provision. Section 1107(b) provides:
>
> Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.
>
> This section plainly means that disqualification is not mandated solely because of prior employment or representation by the debtor. Since [counsel] was found to be disqualified because two of its members are insiders as defined by the Code, section 1107(b) does not apply. [Counsel's] conclusion that the section applies to totally exclude the "disinterested person" requirement in cases where a debtor in possession, rather than a trustee, employs an attorney, requires a tortured

interpretation which the court cannot accept.

*In re Leisure, Inc.*, 33 B.R. 121, 123 (D.C. Minn.1983), *affirming* 32 B.R. 751 and 32 B.R. 753 (Bankr.D.Minn.1983). In this case, the Court is not concerned with merely prior representation, nor, necessarily, with the creditor status of counsel, but is dealing with counsel who was also an equity holder and an officer.

The statute should be interpreted as written, unless the language is ambiguous or would produce an absurd result. As one bankruptcy court has stated:

> In *In re Philadelphia Athletic Club, Inc.*, 20 Bankr. [328] at 334, the district court noted:
>
>> It is clear, therefore, that the definition of disinterested person in paragraph (13) promotes the policy that as a general principle professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.
>
> (quoting 1 Collier Bankruptcy Manual, § 101.31 (1981) (emphasis added).

*In re The Cropper Co.*, 35 B.R. 625, 11 B.C.D. 637, 639 (Bankr.M.D.Ga.1983).[1] The *Cropper* Court also noted that such a conclusion was consistent with the ABA Code of Professional Responsibility, Canon 9, which provides that an attorney shall avoid "even the appearance of professional impropriety." *In re The Cropper Co.*, 35 B.R. 625, 11 B.C.D. at 641. Of course, these policies should be balanced against the debtor's right to choose counsel of his own choice. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir.1979); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir.1973); *Woods v. Covington County Bank*, 537 F.2d 804, 812 (5th Cir.1976); Kaufman, *The Former Government Attorney and the Canons of Professional Ethics*, 70 Harv.L. Rev. 657 (1957).

Counsel notes that neither the debtor nor any creditor, nor the Creditor's Committee, has raised any objection.

■ The Bankruptcy Court, however, has the responsibility to police itself and those who practice before it in order to preserve its integrity and public confidence. *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1337, 1349 (5th Cir. 1981); *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979); *In re Alton Telegraph Printing Co.*, 14 B.R. 238, 8 B.C.D. 457 (Bankr.S.D. Ill.1981); *see also Dickinson Industrial Site, Inc. v. Cowan*, 309 U.S. 382, 388, 60 S.Ct. 595, 599, 84 L.Ed. 819 (1940); *Leiman v. Guttman*, 336 U.S. 1, 4–9, 69 S.Ct. 371, 372–75, 93 L.Ed. 453 (1949); *Brown v. Gerdes*, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (1944). Even though firms practicing in the bankruptcy field have expanded in recent years, and many that did not have bankruptcy departments now have such departments, the bankruptcy bar appears to be a rather collegial group. The Court must be concerned with the appearance of accommodation among the members of the bankruptcy bar and its effect on maintaining public confidence in the bankruptcy system.

The Court notes that counsel argues that its ownership of approximately one per cent of the debtor's stock is *de minimus*. The Court, however, cannot agree. From a reading of the papers supplied, it would appear that its stock ownership was consistent with its active role in the corporation. Indeed, counsel noted that the purpose of the ownership was "in order to further enhance the company's relationship with counsel. [The principal] believed that [counsel] would better serve the debtor if [counsel] had a personal stake in the company." At hearing, the principal, himself a

---

1. The possibility that counsel may have taken steps to rid himself of the stock in question and remove himself as an officer/secretary is not significant. 11 U.S.C. 101(13)(D). *In re Michigan Interstate Ry. Co.*, 32 B.R. 327, 329–30 (Bankr.E.D.Mich.1983).

European, noted that such a provision was more of a "European custom" than anything else. Still, if the purpose of the stock was to create the feeling of a closer relationship, it would be contradictory to counsel's contention that the amount of stock was *de minimus*. Further, the Code's definition of disinterested is non-conditioned on a requirement of a substantial stock interest but merely an equity interest, and Congress has shown its knowledge of the difference and ability to distinguish between "any" and "substantial."

The Court notes that the motion in question took nearly three months to reach its chambers. The Court acted within two days of the motion reaching its desk. That the motion may have been in the clerk's office or the United States Trustee's office for the balance of the three months is unfortunate. However, counsel, as an experienced bankruptcy petitioner and a former law clerk should have been aware that delays and misplaced papers are all too common between the clerk's office, the United States Trustee, and the Court. Accordingly, he had the right, if not duty, to see that the matter was brought to the Court's attention, especially since he was appearing before the Court in this and other cases. Counsel also points to the potential delay and confusion that arises from the imminent need for a new cash collateral order. However, that issue was dealt with in *In re The Cropper Co.*, 35 B.R. 625, 11 B.C.D. 637 (Bankr.N.D.Ga.1983) and was not controlling; in fact, the cash collateral request was denied until new counsel was obtained.

■ Therefore, in accordance with the above analysis, I have a clear violation of the statute. It has been suggested that debtor-in-possession's counsel's responsibilities are not the same as those of a trustee's counsel and that there are good reasons for a strict interpretation of the language regarding counsel for the trustee and creditor's committee, but not as to debtor's counsel. In short, each have different responsibilities from the debtor-in-possession, whose bottom line is trying to save his business and the interest of equity holders. The Code recognizes that difference when it excludes from the responsibilities of a debtor-in-possession, in § 1107(a), the investigative functions of the trustee where there would be a need for impartial personnel. Counsel argues further that under the pressures of emergencies at the time of filing, the debtor has an immediate need of the services of a counsel in which it has confidence and which counsel has a knowledge of the debtor and its problems. That, of course, would be the debtor's prepetition counsel, a party that would naturally be owed for prepetition services. The logical conclusion of counsel's argument is that if all present counsels who were prepetition creditors were excluded from representing debtors, not only would few debtors retain their former counsel, but 11 U.S.C. § 1107(b) would be rendered meaningless. It is, of course, a maxim of statutory construction that a statute should be read so that all its provisions and terms are meaningful. *United States v. Menasche*, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955); *Wilkinson v. Leland*, 27 U.S. 627, 662, 2 Pet. 627, 7 L.Ed. 542 (1829); *Tabor v. Ulloa*, 323 F.2d 823 (9th Cir.1963); *Commissioner of Corporations & Taxation v. Chilton Club*, 318 Mass. 285, 61 N.E.2d 335 (1945).

Counsel's argument, however, cuts against counsel as § 1107, as noted above, exempts disqualification *"solely* because of such person's employment by or representation of the debtor."* (emphasis added). Congress was certainly familiar with the terms "creditors," "equity holders," and "officers" and could have expressly utilized such terms if they wished to exempt such persons. Section 327(a) not only applies to attorneys, it also applies to "accountants, appraisers, auctioneers, [and] other professional persons," all of which may have been employed by the debtor. Note that § 101(13)(D) defines a disinterested persons as one who "is not and was not, within two years before the date of the filing of the petition, a director, officer, or *employee* of the debtor." (emphasis added). Accordingly, § 1107(b), despite counsel's argu-

ment, does have a purpose—that of allowing former employees' employment with the debtor, provided they otherwise qualify as "disinterested."

Still, the Court notes that many of the former employees protected (or exempted) by § 1107(b) are, in the vast majority of cases, pre-petition creditors. Indeed, the Court is at a loss to understand why this issue has not come before this Court, among others, more often. The Court notes that there are those decisions that attempt to distinguish the creditor relationship from that of an equity security holder, suggesting that the latter is more problematic. Accordingly, those cases permit the pre-petition "creditor" employees to continue their employment with the debtor. *See In re Leisure Dynamics Inc.*, 32 B.R. 753, 757 (Bankr.D.Minn.1983); *In re Heatron, Inc.*, 5 B.R. 703 (Bankr.W.D.Mo.1980). However, from the standpoint of a potential conflict, the *opposite* would appear to be the case. One can easily conjure the conflict of a creditor/counsel with the debtor as, for example, to an advantageous sale from the point of view of the creditors as opposed to a marginal plan of reorganization and continuance of the business. Indeed, an equity security holder/counsel would appear to be in the best position to represent the debtor vigorously. This contradiction is all the more relevant when one realizes that courts, including this court, have relied upon Canon 9 of the ABA Code of Professional Responsibility (avoidance of impropriety) to void counsel representation. What "impropriety" exists when counsel, as a stockholder and officer, is encouraged to represent the debtor vigorously? Can the same be said of a creditor's potential conflict? This *non sequitor* would appear be continued in the Code provisions. However, it is not the province of the courts to rewrite the statutes when they disagree with the policy, or non-policy, behind a statute. As the courts have noted:

it is not the responsibility or function of this court to perform linguistic gymnastics in order to upset the plain language of Congress as it exists today.

*State of Alabama v. Marshall*, 626 F.2d 366, 369 (5th Cir.1980).

When the Court is confronted with the task of construing legislation of this character, there is special force to the rule that the plain statutory language should control and that resort to legislative history is appropriate only when the statute itself is ambiguous. Congress has a special duty to choose its words carefully when it is drafting technical and complex laws; we facilitate our work as well as that of Congress when we adhere closely to the statutory text.

*St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 791, 101 S.Ct. 2142, 2152, 68 L.Ed.2d 612 (Stevens, J., concurring) (1981).

Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power of veto. The lines ascribed to Sir Thomas More by Robert Bolt are not without relevance here:

The law, Roper, the law. I know what's legal, not what's right. And I'll stick to what's legal.... I'm *not* God. The currents and eddies of right and wrong, which you find such plain-sailing, I can't navigate. I'm no voyager. But in the thickets of the law, oh there I'm a forester.... What would you do? Cut a great road through the law to get after the Devil?... And when the last law was down, and the Devil turned round on you—where would you hide, Roper, the laws all being flat?... This country's planted thick with laws from coast to coast—Man's laws, not God's—and if you cut them down ... d'you really think you could stand upright in the winds that would blow them?... Yes, I'd give the Devil benefit of law, for my own safety's sake." R. Bolt, A Man for All Sea-

sons, Act I, p. 147 (Three Plays, Heinemann ed. 1967).

*TVA v. Hill,* 437 U.S. 153, 194–95, 98 S.Ct. 2279, 2301–02, 57 L.Ed.2d 117 (1978).

> At most (appellants) have shown that the amendment's title and legislative history create an ambiguity of purpose. This is not a sufficient basis for ignoring clear statutory language.

*Ciampa v. Secretary of Health and Human Services,* 687 F.2d 518, 526 (1st Cir. 1982).

There is little legislative history of § 1107(b), but what little there is may be found in Senate Report 989, 95th Cong., 2nd Sess. (1978) at page 116, U.S.Code Cong. & Admin.News 1978, 5787 at page 5902. This pointed to the debtor-in-possession stepping into the trustee's shoes for both benefits and duties (except investigative) and cited *Wolf v. Weinstein,* 372 U.S. 633, 649–650, 83 S.Ct. 969, 979–80, 10 L.Ed.2d 33 (1963). This pre-Code Chapter X case disqualified and denied compensation to a debtor's counsel who traded in the debtor's stock.

The language limited to prior employment also appears in two early versions of the Code. *See* H.R. 31, 94th Congress, 2nd Sess. (1975), § 4–309(c) and H.R. 32, 94th Congress, 2nd Sess. (1975), § 4–312(c). These sections used the term "merely" which was changed to "solely" in the 1977 House version and the 1978 Senate version. *See* House Report 595, 95th Cong. 1st Sess. 328 (1977) and Senate Report 989, 95th Cong., 2nd Sess., 38 (1978), U.C.Code Cong. & Admin.News 1978, 5787.[2] In the final version of the 1978 Act, § 327(c) became § 1107(b).[3]

Accordingly, there is no such ambiguity, either in the statute or legislative history, as would allow this Court to reconstruct the statute as counsel would have the Court do or even as I might prefer. The Court is not and should not be a short cut to congressional amendment.[4]

On the other hand, there is very respectable authority and overriding considerations that equitable principles govern the exercise of bankruptcy 28 U.S.C. § 1481. *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).

> [E]quitable remedies are a special blend of what is necessary, what is fair and what is workable.

(footnote omitted) *Lemon v. Kurtzman,* 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973). However, although

> Courts of equity have long applied standards of conscience to conduct on an individual basis to prevent formally proper but unconscionable applications of legal rules; they have not engaged in the practice of making abstract legislative judgments about the fairness of a result contemplated by the legislature's statutory scheme if it has otherwise been followed in good faith and without overreaching. *See Colonial Trust Co. v. Goggin,* 230 F.2d 634, 636–37 (9th Cir. 1955).

*In re Ahlswede,* 516 F.2d 784, 787 (9th Cir.1975). Moreover,

> While a bankruptcy court is a court of equity, it is necessarily bound by the rule Congress has adopted to guide its deliberations.

---

2. Use of this language is continued in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.Law 98–353. There, § 430(c) continues the use of the language "solely" in 11 U.S.C. § 327(c); in effect, a reaffirmance of the Bankruptcy Code's policies.

3. Counsel, in arguing in favor of a broad interpretation of § 1107(b), noted that a narrow interpretation would make §§ 1107(b) and 327(e) duplicative, if not contradictory. *See* Supplemental Memorandum in Support of Debtor's Application, at page 2–3. However, if they do appear duplicative, it is only because the House adopted § 1107(b) of the Senate amendments to clarify a point not covered by the House bill. 124 Cong.Rec. 34005 (1978).

4. The Court notes that the "Bankruptcy Amendments and Federal Judgeship Act of 1984" that makes literally hundreds of technical and substantive changes in the 1978 Code including allowing counsel to a creditor to be counsel to Creditor's Committee if no one objects—does not alter these provisions in § 1107(6) and § 327(a).

*In re Levens,* 563 F.2d 1223, 1224 (5th Cir.1977).

Counsel, however, would have the Court rely on that line of cases that somehow find an overriding intent despite congressional language

A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.

*Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918). Further, the Supreme Court in *United States v. American Trucking Assns.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940), made the following salient comments on statutory construction:

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words.

(footnotes omitted) *Id.,* quoting *Ozawa v. United States,* 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 (1922).

On the other hand, it is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning. Indeed, in extreme situations this doctrine has been carried so far that language inescapably covering the occasion has been disregarded when it defeats the manifest purpose of the statute as a whole. *Holy Trinity Church v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226; *Markham v. Cabell,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165;

*Cawley v. United States,* 2 Cir., 1959, 272 F.2d 443.

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960) (L.Hand). *See also, Cartledge v. Miller,* 457 F.Supp. 1146, 1154 (S.D.N.Y.1978); *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir.1944) (L.Hand, J., *concurring*).

Further,

"form should be disregarded for substance and the emphasis should be on economic reality."

*Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967), *S.E.C. v. W.J. Howey Co.,* 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946). Finally, the Supreme Court has noted that:

[I]t has long been a "familiar rule, that a thing may be within the letter of the statute and yet not within the statute because not within its spirit, nor within the intention of its makers." *Holy Trinity Church v. United States,* 143 U.S. 457, 459 [12 S.Ct. 511, 512, 36 L.Ed. 226] (1892).

*Muniz v. Hoffman,* 422 U.S. 454, 469, 95 S.Ct. 2178, 2187, 45 L.Ed.2d 319 (1975).

As persuasive as this line of cases is, and, as much respect as this Court may have for counsel, the Court must decline to follow such a rationale in this instance. Simply put, there is no purpose or policy, in the Code or its legislative history, that is contrary to the plain meaning of the statute's words. Further, although the Court is limited to interpreting ambiguities, *St. Marin Evangelical Lutheran Church v. South Dakota, supra, Ciampi v. Secretary of Health and Human Services, supra,* or filing legislative gaps, *In re Adamo,* 619 F.2d 216 (2d Cir.1980); *In re Kohn,* 20 C.B.C. 994 (Bankr.S.D.N.Y.1979), or otherwise drawing upon the legislative intent from the language actually employed by Congress, I do not find any ambiguity, or questionable legislative gap, or other legislative intent that can be drawn upon, that is not perfectly consistent with the accepted meaning of the language utilized by Congress. That the policy behind

the language seems counterproductive is irrelevant. Moreover, that personally, would have considered debtor's counsel in a substantially different light than if he was proposed as trustee's counsel or creditor's committee's counsel, where a conflict or need for impartiality would be greater, and would give more weight to the debtor-in-possession's choice of counsel, is irrelevant. Finally, that I personally disagree with the policies behind the statute, is also irrelevant. As long as the choice was clearly expressed, it was up to Congress and not the Court to determine policy.

Accordingly, the debtor-in-possession's application to employ counsel is denied.