**In re CHESTNUT HILL MORTGAGE CORP., Debtor.**

**Bernard P. ROME, Appellant,**

v.

**Joseph BRAUNSTEIN, Trustee in Bankruptcy of Chestnut Hill Mortgage Corp., Appellee.**

**Civ. A. No. 92–10561–Z.**

United States District Court, D. Massachusetts.

July 26, 1993.

Bernard P. Rome, pro se.

Joseph Braunstein, pro se.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Bernard P. Rome appeals an order of the United States Bankruptcy Court denying him compensation for services rendered as counsel to the debtor under chapter 11, Chestnut Hill Mortgage Corporation ("CHMC"). He also asserts error in the award to the bankruptcy trustee and his counsel of all compensation for which they applied.

### I. Background

This appeal arises from an acknowledged "economic disaster" in which a failed reorganization has few assets left to distribute to creditors. Appellant filed a voluntary petition on behalf of CHMC under chapter 11 of the Bankruptcy Code on November 27, 1989. On December 5, 1989, he caused CHMC, as debtor-in-possession, to file an

application to employ him as counsel. The application was accompanied by the affidavit of the proposed attorney attesting that (1) he had no connection with CHMC, its creditors, or any party in interest other than as counsel to CHMC; and (2) he represented no interest adverse to the estate. The bankruptcy court allowed the application ten days later, on December 15. In the Spring of 1990, appellant, on behalf of CHMC, filed a reorganization plan and a disclosure statement providing for a twenty percent dividend to CHMC's unsecured creditors. Upon the objection of several creditors, the bankruptcy court rejected the plan. An amended plan was filed in August 1990; it too was rejected by CHMC's creditors. On August 21, 1990, Joseph Braunstein was appointed as chapter 11 bankruptcy trustee.

On May 30, 1990, some six months after the filing of CHMC's chapter 11 petition and appellant's appointment as counsel, an involuntary chapter 7 petition was filed against Arnold Levitt, the president and sole shareholder of CHMC. Mr. Levitt, too, sought to employ appellant as his counsel and that application was allowed by the bankruptcy judge.

In the Fall of 1990, the trustee negotiated the sale of CHMC's assets to Sandra Dickerman, who was represented in this transaction by appellant. The sale was approved by the bankruptcy court in January 1991, and when it was completed, CHMC's chapter 11 bankruptcy was converted to a chapter 7 in March 1991.

In late 1991, both appellant and trustee filed their applications for fees for services rendered on behalf of CHMC. Upon receiving objections to both applications the Court held a hearing. It thereafter entered orders allowing, in full, the fee requests of trustee and trustee's counsel for $87,724.84; denying appellant's application in its entirety.

The bankruptcy judge explained in the memorandum accompanying the orders that it was denying fees to appellant for the following reasons: (1) the case produced virtually no benefit to creditors and loan participants; (2) appellant's simulta-

neous representation of CHMC as seller and Dickerman as buyer of the assets was improper; and (3) appellant's continued representation of CHMC, Arnold Levitt and Mrs. Levitt was inappropriate. The Court also referred to the fact that appellant acted as clerk of the debtor corporation during the bankruptcy proceedings, a fact that he had failed to disclose in the application for appointment. In addition, the Court remarked that appellant's wife was a creditor of CHMC and therefore appellant was not disinterested, as required under 11 U.S.C. § 327(a) (1988). Appellant had, however, disclosed this fact in his affidavits. The Court further stated that the interests of Arnold Levitt and Sandra Dickerman were adverse to those of the estate, and many of the services for which appellant seeks compensation were performed solely for their benefit. Moreover, the bankruptcy judge noted that certain creditors characterized appellant as "less than cooperative" and, in fact, obstructionist.

## II. Standard of Review

This Court must accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous." Conclusions of law and legal significance accorded to facts, however, are subject to de novo review. Bankr.Rule 8013, 11 U.S.C.A. (West 1984 & Supp.1993); *In re Hemingway Transport*, 126 B.R. 656, 658–59 (Bankr. Mass.1991), *aff'd*, 954 F.2d 1 (1st Cir.1992).

Bankruptcy courts historically have been accorded broad discretion regarding factual matters, as they are "on the front line, in the best position to gauge the ongoing interplay of factors and to make delicate judgment calls." *In re Martin*, 817 F.2d 175, 182 (1st Cir.1987). The bankruptcy court likewise has great discretion in determining the reasonableness of attorney's fees, and only when the bankruptcy judge abuses this discretion is it proper for a reviewing court to intervene. *In re Botelho*, 8 B.R. 305, 306 (Bankr. 1st Cir.1981). However, these standards are tempered by the "overriding consideration

that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).

### III. Discussion

Although the bankruptcy court listed three separate reasons for its denial of appellant's application for fees, it relied on only two: the results achieved by appellant and his numerous conflicts. In light of the imperatives of 11 U.S.C. § 327 (1988), I find it unnecessary to consider the extent of any benefit appellant may have provided the estate.

■ Appellant's simultaneous representation of a number of parties with adverse interests throughout these proceedings is indeed troubling. The Bankruptcy Code, 11 U.S.C. §§ 101(14), 327, requires that any professional employed by the debtor's estate to assist the trustee must be disinterested and may not hold or represent an interest adverse to the estate.[1] This requirement applies equally to an attorney appointed to represent a debtor in possession. 11 U.S.C. § 1107 (1988); *In re Anver Corp.,* 44 B.R. 615, 618–20 (Bankr.Mass. 1984).

■ The standards for the employment of court appointed attorneys are exacting because Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process. *In re Cropper Co.,* 35 B.R. 625, 629 (Bankr.M.D.Ga.1983). Thus, the Bankruptcy Code permits denial of an attorney's compensation for services and reimbursement of expenses if that attorney is not a disinterested person or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such attorney is employed. *See* 11 U.S.C. § 328(c) (1988). The United States Supreme Court has stated that "[w]here an actual conflict of interest exists, no more need be shown in this type of case to

support a denial of compensation." *Woods v. City Nat'l Bank & Trust Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941).

Notwithstanding the general rule, a review of the relevant case law reveals two approaches taken by courts in response to conflicts on the part of counsel appointed by the court. One approach mandates complete denial of compensation regardless of the intrinsic value of the attorney's services or the benefit obtained for the estate. *In re B.E.T. Genetics, Inc.,* 35 B.R. 269 (Bankr.E.D.Cal.1983); *In re Chou–Chen Chemicals, Inc.,* 31 B.R. 842 (Bankr. W.D.Ky.1983); *In re 765 Assoc.,* 14 B.R. 449 (Bankr.D.Haw.1981); *In re Paine,* 14 B.R. 272 (Bankr.W.D.Mich.1981).

The other line of cases rooted in the equitable nature of the bankruptcy court holds that the judge should not be bound by a completely inflexible rule requiring denial of all fees in all cases. *In re Roberts,* 46 B.R. 815 (Bankr.Utah 1985); *In re Watson Seafood & Poultry Co.,* 40 B.R. 436, 440 (Bankr.E.D.N.C.1984). This relaxed standard has been held to be particularly appropriate in corporate reorganization cases. *In re New York, N.H. & H.R. Co.,* 567 F.2d 166, 175 (2d Cir.), *cert. denied,* 434 U.S. 833, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977); *Cle–Ware Indus. v. Sokolsky,* 493 F.2d 863 (6th Cir.), *cert. denied,* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974); *Silbiger v. Prudence Bonds Corp.,* 180 F.2d 917 (2d Cir.), *cert. denied,* 340 U.S. 813, 71 S.Ct. 40, 95 L.Ed. 597 (1950). These courts have thus allowed partial fees. *In re Watson Seafood,* 40 B.R. at 442–43; *In re Devers,* 33 B.R. 793 (D.D.C.1983); *In re King Resources Co.,* 20 B.R. 191 (D.Colo. 1982).

■ *In re Martin,* 817 F.2d 175 (1st Cir.1987), places the First Circuit in the latter camp. In that case a lawyer had obtained a mortgage on the debtor's real estate as security for the fees to be in-

---

1. 11 U.S.C. § 101(14) (Supp. III 1991); 11 U.S.C. § 327 (1988). Section 327 provides in relevant part that professional persons, including attorneys, who are employed to assist the trustee must not hold or represent an interest adverse to the estate and must be disinterested persons. Section 101(14) defines "disinterested person" to mean a person that is not, *inter alia,* a creditor, equity security holder, insider, director, officer or employee of the debtor.

curred in connection with a prospective bankruptcy proceeding. In reversing the lower court's order that the mortgage was per se invalid, the Court of Appeals opted for a flexible rule. Although the court cautioned that "[n]ot every conflict of interest must result in sending counsel away to lick his wounds, ... doubts are to be resolved in favor of" denying compensation. Relevant to such judgments are both the potential for conflict and the appearance thereof. I review the several relationships at issue in light of this standard.

### A. Dual representation of CHMC and Sandra Dickerman.

■ The parties agree that an inherent conflict of interest exists in an attorney's representation of both sides in a negotiation for the acquisition of a debtor's assets. Nonetheless, appellant argues that once the trustee was appointed by the Court to represent the bankrupt estate, the trustee—not appellant—represented CHMC's interests, effectively eliminating any potential conflict posed by appellant's subsequent representation of the purchaser, Sandra Dickerman.[2]

Although it is undisputed that an actual conflict existed, the degree to which this conflict adversely affected the estate is not as obvious. Nevertheless, when viewed in the context of appellant's several other conflicts, the bankruptcy judge did not commit clear error in finding that appellant's representation of both Dickerman and CHMC was patently inappropriate.

### B. Simultaneous representation of CHMC, Arnold Levitt, and Mrs. Levitt.

The bankruptcy court found that Arnold Levitt's interests "were and are adverse to those of this estate." This finding is supported by accusations in the record that Mr. Levitt had looted the assets of CHMC. Although these accusations ultimately

2. In this case the court-approved sale of CHMC's assets occurred five months after the trustee's appointment.

3. Appellant's argument that he disclosed his role as clerk on the clerk's certificate is unavailing.

were not proved, the mere specter of impropriety on the part of Mr. Levitt created a scenario in which appellant simultaneously represented both the estate and a party charged with stealing from that estate. At that point he could not give CHMC his undivided loyalty, and the bankruptcy judge acted well within her discretion to deny fees on this basis alone.

There is little evidence in the record regarding appellant's representation of Mrs. Levitt; however, the aggregate effect of his other conflicts most certainly colored the Court's assessment of this single conflict. In light of this I cannot find that the bankruptcy judge's determination was clearly erroneous.

### C. Appellant's service as clerk of CHMC.

■ The trustee claims that appellant's failure to disclose that he was the clerk of CHMC in the affidavit accompanying his motion to appoint counsel is an independent ground for denying compensation. See In re Roger J. Au & Son, 71 B.R. 238, 242 (Bankr.N.D.Ohio 1986); In re Whitman, 51 B.R. 502, 507 (Bankr.D.Mass.1985).[3] Although the bankruptcy judge did not base her decision on this ground, the law is clear that appellant's service as an officer of the corporation disqualified him as counsel to CHMC because he was not a "disinterested person." 11 U.S.C. § 101(14)(A), (D) (Supp. III 1991). Moreover, appellant's failure to disclose this connection to CHMC in his affidavit compounds the inherent impropriety of playing both the role of corporate officer and counsel. Given that appellant misled the Court, he is not entitled to special consideration for even a partial award of fees.

In sum, appellant's bevy of clients with adverse interests created actual conflicts, rendering it impossible for him to represent CHMC with the requisite undivided loyalty.

It is not the bankruptcy judge's responsibility to examine all the documents in the file to determine if the statements contained in the affidavit are true or comprehensive.

*Conclusion*

The Bankruptcy Code permits denial of compensation when counsel is not a disinterested person, or represents an interest adverse to the estate. 11 U.S.C. § 328(c) (1988). Although any one of appellant's conflicts standing alone arguably would not provide sufficient justification for a wholesale denial of fees, the combined effect of his numerous conflicts is so egregious that this sanction is entirely appropriate. Accordingly, the bankruptcy court's order is affirmed.