**In re HUB BUSINESS FORMS, INC., Debtor.**

**In re WINTHROP HOSPITAL, INC., Debtor.**

Bankruptcy Nos. 92–13408–JNG, 92–14034–JNG.

United States Bankruptcy Court, D. Massachusetts.

Oct. 21, 1992.

Michael P. Cashman, Widett, Glazier & McCarthy, Boston, Mass., for debtor Hub Business Forms, Inc.

Mary K. DeNevi, Widett, Slater & Goldman, Boston, Mass., for debtor Winthrop Hosp., Inc.

## MEMORANDUM

JAMES A. GOODMAN, Chief Judge.

### I.  INTRODUCTION

Several applications to employ professional persons pursuant to 11 U.S.C.

§ 327 [1] have been filed in the above captioned cases and are now pending before the Court. These two cases are not consolidated or jointly administered, but because the issues raised by the applications in the two cases are identical, the Court addresses them together in a single memorandum.

On July 23, 1992, the Court held a hearing on the application of Hub Business Forms, Inc. ("HBF") to employ an accountant, Joseph Walter, C.P.A. The U.S. Trustee objected to the application. The Court took the applications under advisement and requested the parties to submit briefs.

On August 28, 1992, the Court held a hearing on the applications of Winthrop Hospital, Inc. ("Winthrop") (1) to employ the law firm of Bagley & Bagley, P.C. as special counsel; (2) to employ the Law Offices of Peter V. Kent as special counsel; and (3) to employ the accounting firm of Ernst & Young. The Court, after requesting briefs, took the applications under advisement.

On September 17, 1992, Winthrop came before the Court on its application to employ the firm of Deloitte & Touche. The Official Unsecured Creditors' Committee objected to the application. The Court took that matter under advisement without the need for further briefs from the parties.

## II. POSITIONS OF THE PARTIES

### A. *Applications Pursuant to Section 327(a)*

The Court has before it briefs submitted by HBF and Winthrop in support of their respective applications to employ professionals, as well as the brief of the U.S. Trustee opposing HBF's application to employ Joseph Walter. Since the legal arguments of the applicants are essentially the same in both cases, the legal arguments contained in the U.S. Trustee's brief apply with equal force to Winthrop's applications.

HBF argues that section 1107 of the Bankruptcy Code creates an exception to the requirement of disinterestedness found in 11 U.S.C. § 327. HBF cites 11 U.S.C. § 101(14), which defines disinterestedness, and 11 U.S.C. § 1107(b), which it argues creates an exception to the requirements of section 327 in support of its position. Section 101(14) provides:

"disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

\*　　\*　　\*　　\*　　\*　　\*

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, or connection with, or interest in, the debtor ..., or for any other reason.

11 U.S.C. § 101(14). Section 1107(b) states:

Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

1. Section 327 provides in relevant part:
(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
\*　　\*　　\*　　\*　　\*　　\*
(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.
\*　　\*　　\*　　\*　　\*　　\*
(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.
U.S.C. § 327.

11 U.S.C. § 1107(b).[2] HBF recognizes that section 327(a) contains a two prong test that requires that professionals employed in a case be disinterested and neither hold or represent an interest adverse to the estate. However, it argues that "the twin requirements of disinterestedness and lack of adversity telescope into what amounts to a single hallmark," *In re Martin*, 817 F.2d 175, 180 (1st Cir.1987), so that the ultimate consideration in hiring a professional pursuant to section 327(a) is disinterestedness. HBF cites several cases in which bankruptcy courts have held that section 1107(b) provides an exception to section 327's disinterestedness requirement, allowing employment of professionals who are creditors solely because of prepetition employment. *See, e.g., In re Viking Ranches, Inc.*, 89 B.R. 113 (Bankr.C.D.Cal.1988); *In re Best Western Heritage Inn Partnership*, 79 B.R. 736 (Bankr.E.D.Tenn.1987); *In re Heatron, Inc.*, 5 B.R. 703 (Bankr.W.D.Mo. 1980).

In *Viking Ranches, supra*, the court considered the debtor's request to employ the accounting firm of Ernst & Whinney, the holder of an unsecured, prepetition debt in the approximate amount of $21,000, for services performed in a case with total debt far in excess of that amount. The U.S. Trustee filed the only objection to the application. Relying upon *In re Pierce*, 809 F.2d 1356 (8th Cir.1987), he argued that Ernst & Whinney as a creditor was not disinterested and that the majority of cases hold that section 1107(b) "applies as an exception only where the professional is not owed any money pre-petition, and had merely been previously employed by the debtor-in-possession." *Viking Ranches*, 89 B.R. at 114. Noting a distinction between debtor-in-possession cases and trustee cases, the court stated the following:

> the purpose of the Section 1107(b) exception in debtor-in-possession cases is to allow the debtor-in-possession to utilize its "management team" which may include professionals who are familiar with the operation of the business and in whom the debtor-in-possession has confidence. Obviously, if these professionals have provided regular service to the debtor, the chances are quite substantial that these professionals will be unsecured creditors of the estate. To allow pre-petition professionals to be employed only if their debt is "paid in full," would necessitate these professionals, when they become aware of severe financial problems, to seek payment in full of the obligation in order that said professionals might be employed by the debtor-in-possession in the future. This would tend to taint the relationship of professionals to debtors-in-possession and may even encourage "adverse" positions due to the possibility that payment to these professionals, prior to bankruptcy for pre-bankruptcy work would be preferential payments and possibly voidable, if pursued by separate counsel. It does not make sense that Congress would encourage such action in debtor-in-possession cases.

*Id.* at 115.

The U.S. Trustee, in its opposition to HBF's application to employ Joseph Walter as an accountant, cites *In re Anver Corp.*, 44 B.R. 615 (Bankr.D.Mass.1984), as the majority rule and the "settled law" in this district. According to the U.S. Trustee, the holder of a prepetition claim is disqualified from serving as a professional. *See Anver Corp., supra. See also In re Siliconix, Inc.*, 135 B.R. 378 (N.D.Cal.1991) (creditors are *per se* "interested," and so are barred from employment as professionals); *In re Watervliet Paper Co.*, 111 B.R. 131 (W.D.Mich.1989) (pre-petition unsecured claim by an attorney against the debtor prevents that attorney from being "disinterested"); *In re Jaimalito's Cantina Associates Ltd. Partnership*, 114 B.R. 1 (Bankr.D.D.C.1990) (counsel who held prepetition claim of unspecified amount did not qualify as "disinterested").

The U.S. Trustee argues that the "minority" rule advocated by Winthrop and HBF

---

**2.** Section 1107(a) provides a debtor in possession with all the rights and powers of a Chapter 11 trustee. Section 1107(b), by its terms, creates an exception only for professionals sought to be employed by debtors-in-possession, and not by trustees. Both HBF and Winthrop are operating as debtors-in-possession, so 1107(b) applies in each case.

is "wrong as a matter of law." The plain meaning of the Bankruptcy Code, the U.S. Trustee asserts, is to prevent the employment of professionals with any claims against the debtor. HBF attempts to distinguish *Anver* on grounds that the court disqualified two professionals not merely because they were creditors but because one was an officer and the other an equity holder of the debtor. HBF correctly notes that these are relationships for which section 1107(b) does not provide an exception. Nevertheless, in *Siliconix, supra,* the court unequivocally rejected the reasoning adopted by HBF and Winthrop and set forth in the *Viking Ranches* case. The court in *Siliconix* stated:

> The clear language of the statutes involved proscribes employment of creditors. Moreover, a majority of courts have specifically rejected the arguments offered in support of the minority rule.... "[W]ith respect to questions of efficiency, it is by now plain that Congress when it enacted § 327(a), made a conscious choice that efficiency would be sacrificed for the appearance of propriety." The bankruptcy rules were designed to "insure the integrity of the bankruptcy process and the public confidence in the bankruptcy courts."

*In re Siliconix, Inc.,* 135 B.R. 378, 380 (Bankr.N.D.Ca.1991) (citations omitted). The court also emphasized the lack of clear standards for applying the minority rule:

> courts permitting employment of creditors have required the claim against the estate be "small," and required that the particular professional must be able to confer a benefit to the debtor in terms of efficiency. However, no court has explained just how small "small" must be, and whether the size of the claim is to be evaluated in relation to the other creditors, the total debt, the size of the creditor-professional's business, or anything else.

*Id.*

B. *Applications Pursuant to Section 327(e)*

■ Two of the applications filed by Winthrop seek the employment of *special* counsel pursuant to section 327(e). Winthrop correctly points out that section 327(e) does not contain the requirement that the professional whose employment is sought must be disinterested. *See* 11 U.S.C. § 101(14). Section 327(e) requires only that the professional neither hold nor represent an interest adverse to the estate. Section 327(c) adds the requirement that there be no actual conflict of interest from the representation of a creditor of the debtor by the professional whose employment is sought. Therefore, because of the more limited scope of the employment of special counsel, some connections to the case may be allowed under subsections 327(c) and (e) that would not otherwise be allowed under section 327(a). Winthrop suggests that the appropriate test under section 327(e) is whether there is an actual or potential conflicts with respect to the particular matters for which representation is sought. *In re Statewide Pools, Inc.,* 79 B.R. 312, 314 (Bankr.S.D.Ohio 1987). Winthrop urges the Court to find that no such conflict exists for their two proposed special counsels.

III. DISCUSSION

■ This Court must be guided by the decision of the First Circuit in *In re Martin,* 817 F.2d 175 (1st Cir.1987). In that case, the court was faced with the debtors' application to employ a law firm that held a prepetition mortgage given by the debtors on real estate to secure payment of legal fees that would be incurred during the bankruptcy proceeding. In *Martin* the debtors were unable to provide counsel with a $5,000 retainer. Instead, approximately one month prior to their bankruptcy filing, they executed a note to the law firm in the amount of $10,000. The debtors filed a Chapter 11 petition on the same day the law firm recorded a mortgage to secure repayment of the note. The court held that the prepetition secured claim against the debtor did not render the professional interested *per se,* particularly since, as the court observed, the note was secured by a

second mortgage on property that was not crucial to the debtors' reorganization and the law firm's secured position was fully disclosed.

*Martin* is distinguishable from the present cases, however, because it dealt with a secured claim incurred in contemplation of the filing of a bankruptcy petition. In *Martin,* the First Circuit stated:

> At first blush, this statute [section 327(a)] would seem to foreclose the employment of an attorney who is in any respect a "creditor." But, such a literalistic reading defies common sense and must be discarded as grossly overbroad. After all, any attorney who may be retained or appointed to render professional services to a debtor in possession becomes a creditor of the estate just as soon as any compensable time is spent on account. Thus, to interpret the law in such an inelastic way would virtually eliminate any possibility of legal assistance of a debtor in possession, except under a cash-and-carry arrangement or on a *pro bono* basis. It stands to reason that the statutory mosaic must, at the least, be read to exclude as a "creditor" a lawyer, *not previously owed back fees or other indebtedness,* who is authorized by the court to represent a debtor in connection with reorganization proceedings-notwithstanding that the lawyer will almost instantaneously become a creditor of the estate with regard to the charges endemic to current and future representation.

817 F.2d at 180 (emphasis supplied) (citations and footnote omitted). In a footnote, the court observed that the performance of standard prepetition services to facilitate a Chapter 11 filing would not disqualify an otherwise eligible attorney. *Id.* at n. 5. In view of the distinction between lawyers who become creditors when a bankruptcy filing is contemplated and those who are "previously owed back fees or other indebtedness," *id.,* it is clear to this Court that the position of the First Circuit and the positions of the courts in the cases cited by the U.S. Trustee, *see inter alia In re Siliconix, Inc.,* 135 B.R. 378 (Bankr.N.D.Cal. 1991), are reconcilable. The initial inquiry must focus on whether the obligations owed to the professionals whose employment is at issue were incurred in contemplation of and to facilitate the filing of the bankruptcy petition or whether the obligations were incurred with respect to matters wholly unrelated to the bankruptcy filing. In the latter situation, the rationale of the *Martin* case carries little weight and the unambiguous wording of the statute should be enforced. *Cf. United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Accordingly, the Court rules that with respect to applications filed pursuant to section 327(a) there is no exception carved out by section 1107(b) of the Bankruptcy Code for professionals who are creditors of the debtor's estate for services performed unrelated to the bankruptcy filing.

With this foundation, the Court proceeds to consider the merits of each application in turn.

## IV.  IN RE HUB BUSINESS FORMS

■ HBF filed a petition for protection under Chapter 11 of the Bankruptcy Code on April 6, 1992. HBF's schedules list total assets of $92,582.29 and total debts of $328,220.60, which are all unsecured. HBF filed an application to employ Joseph Walter ("Walter"), a certified public accountant on June 26, 1992. In its application, HBF states that Walter has represented HBF as its accountant for over twenty years. HBF seeks to employ Walter to prepare updated financial statements, to provide financial and management advice, and to assist with projections of cash flow, sales and other relevant financial information. HBF states that the total compensation that Walter will receive shall not exceed $15,000.

HBF's application also discloses that Walter holds an undisputed, unsecured claim in the amount of $7,033.12, representing about 2% of HBF's total debt. The application and the affidavit of Walter state that Walter is disinterested and holds no interest adverse to the estate, except with respect to the unsecured claim.

In accordance with the conclusions of law outlined above, the Court shall not approve HBF's application to employ Walter unless within 15 days of the date of the order, or within such additional time as the HBF may request, Walter files with the Court a waiver of his prepetition unsecured claim. If Walter waives his claim, he will no longer be a creditor, and the bar to his employment resulting from his lack of disinterestedness as a creditor will be removed.

## V. IN RE WINTHROP HOSPITAL

### A. *Ernst & Young*

■ Winthrop filed a petition for protection under Chapter 11 of the Bankruptcy Code on June 10, 1992. Winthrop's schedules list total assets of $12.8 million and total debts of $28.3 million, of which $17.4 million is secured and $10.9 million is unsecured. Winthrop seeks to employ the accounting firm of Ernst & Young ("E & Y") *nunc pro tunc* as of June 24, 1992. Winthrop's application states that, in June 1992, it learned of the need for filing a Determination of Need Application (the "Application") with the Massachusetts Department of Public Health ("DPH"). This Application was necessary for Winthrop to obtain DPH approval to increase the size of Winthrop's psychiatric service. Despite Winthrop's assertion that it only learned of the need for the Application some time in June, the deadline for the Application was July 1, 1992. E & Y stepped in on June 24, 1992, performed the requested duties and prepared the Application. Winthrop's application to employ E & Y states that the value of these services is $21,386. E & Y's services to Winthrop, for which Winthrop makes this application *nunc pro tunc,* have been completed and no future work is anticipated.

Winthrop's application to employ also discloses that E & Y has previously assisted Winthrop in developing monthly cash flow projection models. E & Y holds a prepetition claim for $53,995 for these and other consulting services.

No party in interest filed an objection to Winthrop's application to employ E & Y.

Nevertheless, in accordance with the conclusions of law set forth above, the Court shall not approve the application to employ E & Y, unless within 15 days of the date of the order, or within such additional time as Winthrop may request, E & Y files with the Court a waiver of its prepetition unsecured claim. As in the HBF case, if E & W waives it prepetition claim, it will no longer be a creditor and barred from employment as a result of 11 U.S.C. §§ 327(a) and 101(14).

### B. *Deloitte & Touche*

■ On August 27, 1992, the Debtor has filed an application to employ the firm of Deloitte & Touche ("D & T") to act as an auditor for Winthrop. D & T has worked as Winthrop's auditor since 1981. Winthrop represents that it needs the services of D & T to account for property received by the estate, to maintain Winthrop's financial records, and to determine Winthrop's tax liabilities. Winthrop also expects D & T to provide accounting services to assist Winthrop in verifying accounts receivable with regard to Medicare and Medicaid insurance payments.

The application to employ D & T discloses that D & T holds a $40,664 unsecured claim for services performed prepetition. In addition, D & T is currently employed as an auditor for Advacare, a company with a subsidiary, Maximum Claims Service, which is on the Official Unsecured Creditors' Committee. Winthrop's application further states that D & T may be employed currently or may have been employed in the past as an auditor for other creditors of Winthrop. However, the application to employ provides no further details on this specific issue, and it does not identify any such additional creditors. Despite these potential conflicts, Winthrop asserts that "ethical principals of the accounting profession would prevent D & T from becoming involved in disputes between two clients, such as Winthrop and Maximum Claims Service or some other creditor."

The Unsecured Creditors' Committee filed an objection to Winthrop's application

to employ D & T, citing grounds not relevant to the issue before the Court.

The Court finds that D & T is not a disinterested person, as required by section 327(a). D & T's unsecured claim and connection with Maximum Claims Service, a member of the Official Unsecured Creditors' Committee, creates the potential for conflicts. In addition, by Winthrop's own admission, D & T may be representing other creditors. This presents the possibility of even greater, hidden conflicts. The Court denies Winthrop's application to employ D & T.

### C. *Law Offices of Peter V. Kent*

■ Winthrop has filed an application to employ the Law Offices of Peter V. Kent ("Kent") as special counsel for the collection of patient accounts receivable. Winthrop's application states that Winthrop retained Kent prepetition to collect delinquent or otherwise disputed accounts receivable from third-party payors and patients. Winthrop desires to employ Kent as special counsel to continue these legal services. The application proposes to employ Kent on a contingent fee basis for the postpetition services to be performed.

Winthrop's application discloses that Kent holds an unsecured claim for prepetition services in the amount of $34,569.10, representing about one tenth of one percent of Winthrop's total debt. In addition, Kent is a member of the Official Unsecured Creditors' Committee.

No party in interest filed an objection to Winthrop's application to employ Kent.

Because Winthrop seeks to employ Kent as special counsel, subsections 327(c) and (e), and not 327(a), apply. The appropriate test, then, is whether Kent represents or holds an interest adverse to the estate.

The Court finds that Kent is not precluded from employment because of the prepetition claim for $34,569.10 that he holds. The application to employ Kent is approved. As special counsel for the limited purpose of collecting accounts receivable, his actions will not affect either the administration or outcome of the Chapter 11 case.

### D. *Bagley & Bagley, P.C.*

■ Winthrop has filed an application to employ the law firm of Bagley & Bagley, P.C. ("B & B"), *nunc pro tunc* as of the date of filing, April 23, 1992. Winthrop retained B & B prepetition to represent it at commitment hearings that periodically arise in state court. B & B has represented Winthrop postpetition as well. Winthrop, believing these services to be in the ordinary course of business, has been making periodic payments to B & B.

In addition, Winthrop retained B & B in connection with a charge of employment discrimination filed in 1986 with the Massachusetts Commission Against Discrimination ("MCAD") by a former employee. Winthrop requests in its application to employ B & B as special counsel in the event that the claim becomes the subject of proceedings before this Court. Settlement negotiations in that action have been initiated but now are stayed by the filing.

Winthrop's application to employ B & B discloses that B & B is counsel to East Boston Savings Bank, which is a "participant" in a loan secured by a mortgage on a building owned by Winthrop. Winthrop asserts, though, that B & B does not represent East Boston Savings Bank in any matters involving Winthrop and that counsel to the lead bank on the loan is handling that matter.

The application to employ B & B further discloses that B & B holds a prepetition unsecured claim for legal services in the amount of $1,117.52. In addition, Ralph R. Bagley, a stockholder of B & B, is on Winthrop's Board of Trustees. The application to employ states that Ralph Bagley receives no compensation for his position as a Trustee.

B & B has received payments for postpetition services in the amount of $2,302. Its application to employ also seeks approval of these prior payments.

The Unsecured Creditors' Committee has filed an objection to the application to employ B & B. The Committee objects to the *nunc pro tunc* application. The Commit-

tee also objects to the application because of Ralph Bagley's position on the Board of Trustees.

For the reason set forth in the Committee's objection, the Court shall not approve the employment of B & B. In light of the potential conflicts and the appearance of impropriety, the Court finds that Winthrop has failed to establish that B & B does not hold an interest adverse to the estate. The Court shall await appropriate pleadings with respect to the $2,302 paid to B & B postpetition.

## VI. CONCLUSION

The foregoing shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.