### In re WESTWOOD HOMES, INC., Debtor.

### Bankruptcy No. 91–21299.

United States Bankruptcy Court, D. Maine.

July 12, 1993.

Stephen C. Chute, Portland, ME, for debtor.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

Before the Court is the Application For Compensation And Reimbursement For Expenses ("Application") filed by Stephen C. Chute, Esq. ("Applicant"), attorney for the Debtor,[1] wherein Applicant requests $4,576.50 in fees [2] and $952.68 in expenses

---

1. After a contested hearing, this Court dismissed the present case on November 23, 1992 upon KSB's motion, but specifically retained "jurisdiction for the sole and only purpose of consideration of and ruling upon applications for compensation and/or expenses under 11 U.S.C. § 330 ..." *Order and Judgment Dismissing Chapter 11 Case,* Dkt. #38, at 5.

2. As filed, the Application seeks $5,302.50 in fees. By this Court's calculations, the itemization attached to the Application indicates slight-

for total compensation of $5,529.18, against which he wishes to credit his $5,000.00 retainer.

After due notice, Kennebunk Savings Bank ("KSB") filed an objection urging this Court to deny all compensation sought in the Application on the basis that Applicant holds an adverse interest to the estate pursuant to § 328(c),[3] which allows this Court to:

> deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. 328(c). The basis for this objection is Applicant's dual representation of this debtor as well as its principal, Mr. Charles Reid, himself a Chapter 7 debtor.[4] Upon review of the documentary and testimonial evidence adduced at the hearing, this Court sustains KSB's objection pursuant to § 328(c) and denies all compensation to this Applicant.

■ "[A]pplication of section 328(c) is a matter that is charged to the discretion of the bankruptcy court." *In re Howell,* 148 B.R. 269, 271 (Bankr.S.D.Tex.1992). Many situations, including an attorney's dual representation of a corporate Chapter 11 debtor and another related entity, are not prohibited per se. *See, e.g., In re Huddleston,* 120 B.R. 399, 402 (Bankr.E.D.Tex.1990). Actual conflicts of interest will generally mandate denial of all compensation. *Id.,* at 270. *Woods v. City Nat'l Bank & Trust*

*Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820, 826 (1941); *reh'g denied,* 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941). Even a potential conflict, or the appearance of one, may lead to the same result. The First Circuit has shed some light on this discussion by elucidating an objective standard:

> The naked existence of a potential for conflict of interest does not render the appointment of counsel nugatory, but makes it voidable as the facts may warrant. It is for the court to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action (say, disqualification or disgorgement or invalidation of a lien). Sincerity or protestations of good faith, no matter how genuine, will not be enough. The test must be more an objective one. The question is not necessarily whether a conflict exists—although an actual conflict of any degree of seriousness will obviously present a towering obstacle— but whether a potential conflict, or the perception of one, renders the lawyer's interest materially adverse to the estate or the creditors.
>
>   This inquiry is of necessity case-specific.

*In re Martin,* 817 F.2d 175, 182 (1st Cir. 1987) (citations omitted).

■ The particular facts herein mandate the finding that Applicant has crossed the line. The most convincing evidence is the following correspondence from Applicant to Debtor's accountant on October 17, 1991, approximately two months prior to the filing:

> This will confirm our conclusions of meeting on October 15, 1991 with respect to the estates of Fore Fathers Inn, Inc.,

---

ly more time than that sought. This Court is unable to determine how Applicant arrived at this figure, but presumes that the discrepancy represents a voluntary fee reduction. Applicant consented to adjust his fees downward to the $4,576.50 figure in satisfaction of an objection filed by the Office of the United States Trustee.

**3.** Alternatively, KSB objected to the Application on the basis that Applicant's services did not

benefit the estate, pursuant to § 330. Based on this decision, there is no need for this Court to address this second argument.

**4.** In fact, there are three companion cases—this corporate reorganization, Mr. Reid's personal Chapter 7 case, and another corporate case, Forefather's Inn, Inc., also in Chapter 7.

Westwood, Inc. and Charles Reed. (sic) In accordance with our discussions, it was concluded that it was in the best interest of Charles Reed (sic) to take the following actions:

1. File a Chapter 7 Bankruptcy for Fore Fathers Inn, Inc.;

2. File a Chapter 7 Bankruptcy in the individual name of Charles Reed (sic);

3. File a Chapter 11 Bankruptcy for the corporation of Westwood Inc.

It was discussed that there would be a substantial deficiency due to Kennebunk Savings Bank from the sale of the two properties in Kennebunk. You noted that there were substantial liabilities to individuals on notes and that there were certain judicial liens on the property of Charles Reed (sic) individually, and that filing Chapter 7 bankruptcies for Charles Reed (sic) individually and for the Fore Fathers Inn, Inc. would afford a payroll from non-dischargeable debts.

The deficiencies and liabilities which run against Westwood Inc. would be handled by a Chapter 11 filing whereas there appears to be substantial assets in the several executory contracts for the sale of homes. Also at our discussion we concluded that the non dischargeable debt of the sales tax due to the State of Maine would be cured by operating Westwood Inc. until the assets are liquidated with profits being paid over to the State of Maine as a Section 507 priority payment. A further advantage of the Chapter 11 filing for Westwood Inc. is that Mr. Reed (sic) would be afforded a draw from the company while he operates it during its winding up period. As we discussed, it would appear that we would want to convert Westwood Inc. to a Chapter 7 after all realizable cash had been generated. We noted further that the filing for Westwood Inc. would afford an adversarial proceeding to affect some equitable distribution of that partnership arrangement with Revises' property in Kennebunk.

. . . . .

It may be the case that we would be able to convert the Chapter 11 to a Chapter 7 early in the stage of the case so as to minimize the amount of legal fees spent.

KSB Exhibit #3, at 1–2. This letter leaves no doubt that the purpose of this Chapter 11 case was to benefit Mr. Reid personally rather than the estate. As attorney for both Mr. Reid and the debtor, Applicant represented an interest materially adverse to this corporate estate.

The record confirms the objectives expressed in the above-quoted letter. For example, in ruling upon the motion to dismiss this present case, this Court found that "there is no likelihood of reorganization by the Debtor and no likelihood that a feasible liquidating plan can be proposed . . ." *Order and Judgment Dismissing Chapter 11 Case*, Dkt. #38, at 3. Furthermore, the evidence demonstrates that this debtor filed for reorganization with meager assets, and its operations throughout its pendency under title 11 were clearly insufficient to sustain any type of reorganization.

Applicant has known of the possibility that his fees could be denied due to a conflict of interest since the April 1, 1992 hearing on his amended application for appointment. Therein, his affidavit was revised to indicate his connections with the companion cases, including Mr. Reid's. This Court allowed the appointment with a very specific caveat:

I will allow your application with the caution to you that notwithstanding the fact that any party may apply to the Court for appointment as counsel in any case, that does not prohibit the Court from at any time disallowing fees in the event that it is established at a later date that there was any such conflict. And I don't, by allowing this application now, rule that there are no conflicts because there are insufficient facts at this time . . . to make such a ruling.

Transcript, at 4. It is now clear that from the inception of the case Applicant's simultaneous representation of this corporate debtor and its principal shareholder has

presented a conflict of interest sufficient to deny compensation pursuant to § 328(c).[5]

This Court hereby denies all compensation to Applicant for fees and expenses incurred in connection with this case, and requires that Applicant disgorge all sums and retainers previously received by him as payment for his services in this case.

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.B.P. 7052. An appropriate order shall enter.

## ORDER

Upon the Application for Compensation And Reimbursement For Expenses filed by Stephen C. Chute, Esq. ("Applicant") in the above-captioned case, and in accordance with a Memorandum of Decision executed on even date herewith, it is hereby

ORDERED that Applicant is denied all compensation sought for services rendered and expenses incurred, and it is further

ORDERED that Applicant shall disgorge all retainers or other sums previously received by him in connection with his services for this case, and it is further

ORDERED that the issue of Kennebunk Savings Bank's request for costs, expenses and attorneys' fees incurred in connection with its objection to the application for compensation shall await further review upon subsequent motion by Kennebunk Savings Bank which itemizes all sums requested.

---

**5.** In addition, the Application itself is replete with deficiencies. The narrative summary describes services which had not been performed, and the itemization contains numerous entries which provide this Court with no information as to the specific nature of the service rendered, making it impossible for this court to determine whether or not these services benefitted this estate. This is particularly true where Applicant represents Mr. Reid and has admitted that his first entry of 11.1 hours for schedule preparation inadvertently included time spent on the two companion cases. For example, time entries which read "Office conference with Chuck Reid" or "Meeting in Kennebunk" contain no indication of the content nor purpose of the consultation, and could very well be related to any of the three companion cases. Nevertheless, this Court will not address these deficiencies in detail due to its decision to deny all compensation based on § 328(c).