**In re REMINGTON DEVELOPMENT GROUP, INC., Debtor.**

**Bankruptcy No. 93–10320.**

United States Bankruptcy Court,
D. Rhode Island.

June 10, 1994.

Ernest V. Begin, Greenville, RI, for debtor.

John Boyajian, U.S. Trustee, Providence, RI.

Patricia Antonelli, Partridge, Snow & Hahn, Providence, RI, for Federal Deposit Ins. Corp.

*Memorandum of Decision*

JAMES B. HAINES, Jr., Bankruptcy Judge.*

Before the court is the United States Trustee's (UST's) motion seeking disgorgement of fees by, and sanctions against, Keven A. McKenna, Esq., the debtor's former counsel. After evidentiary hearings and briefing, I conclude for the reasons set forth below that, although there can be no fee disgorgement, sanctions will be imposed against Attorney McKenna for having filed debtor's Chapter 11 petition in violation of Fed. R.Bankr.P. 9011.[1]

---

* For the District of Maine, sitting by designation.

1. This memorandum sets forth findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 9014 and 7052. Unless otherwise noted, all references to chapters and statutory sections are to the Bankruptcy Reform Act of 1978 (the "Bankruptcy Code" or the "Code"), as amended, 11 U.S.C. § 101, *et. seq.*. All references to "Fed.R.Bankr.P." or to "Rule(s)" are to the Federal Rules of Bankruptcy Procedure (August 1, 1993).

## Background

### 1. Pre–Bankruptcy Representation.

Commencing in early 1993, McKenna represented Remington Development Group, Inc., ("Remington" or the "debtor"), and one of its shareholders, Mr. Carlo Cioffi, in connection with litigation in which Cioffi and Remington were co-plaintiffs against the FDIC. McKenna billed both Cioffi and Remington for his services.

On September 3, 1993, Cioffi paid McKenna $3,200.00, his share of the bill, with personal funds. Remington's $25,000.00 obligation to McKenna went unpaid. In the fall of 1993, Remington sought to satisfy some part of its obligation to McKenna by issuing him stock. McKenna held the stock only briefly before deciding not to accept it as payment and tendering it back to Remington.

### 2. The Bankruptcy Filing.

On December 1, 1993, Remington filed a voluntary Chapter 11 petition in order to stay foreclosure proceedings against three of its properties. Craig Raposa, another of Remington's stockholders, intended to negotiate a settlement with the mortgagee and to acquire the properties for himself, but had been unable to forestall the impending foreclosure.

Remington's petition and the accompanying lists, statements and schedules were prepared by Carlo Cioffi and Attorney McKenna's staff without consultation or assistance from McKenna.[2] Neither Remington nor anyone else provided McKenna with compensation or a retainer for bankruptcy related services. After McKenna signed off on it as debtor's counsel, Remington's shareholders carried the petition to the court and filed it.[3]

Remington's statement of financial affairs sets forth two purported payments to Attorney McKenna—$500.00 for "attorney's fees" and $3,200.00 for "debt counselling for bankruptcy." In fact, Remington made no such payments. McKenna's Rule 2016(b)[4] Statement, also erroneous, listed a single $500 payment to him. McKenna was accurately scheduled as an unsecured creditor and listed among Remington's twenty largest creditors.[5]

### 3. The § 341 Meeting.

On January 3, 1994, the UST convened the first meeting of creditors. Carlo Cioffi attended as Remington's secretary and treasurer. McKenna, appearing as Remington's counsel, proceeded much as any debtor's counsel would. In concert with Cioffi, he answered questions about Remington's history, the events precipitating its bankruptcy filing and its expected course in Chapter 11. (Transcript of 1/3/94 § 341 meeting, pages 1–14).

Later, responding to the UST, McKenna declined to waive his $25,000 claim against Remington, acknowledging that he would not qualify to serve as debtor's counsel, but asserting that he was acting as Remington's attorney for "today" only. (Transcript of 1/3/94 § 341 meeting, pages 14–15). McKenna stated that he did not intend to seek court

---

**2.** After the petition had been prepared, perhaps before it was filed, McKenna, Raposa and Cioffi met to discuss the bankruptcy filing. (Transcript of 2/25/94 hearing, page 11).

**3.** It is unclear which of Remington's three shareholders—Raposa, Cioffi or Victor Caetano—filed the petition. The $600 filing fee was paid by Raposa.

**4.** Fed.R.Bankr.P. 2016(b) provides as follows:

**(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor.** Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by

§ 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any such sharing or agreement for the sharing of the compensation with a member or associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment not previously disclosed.

**5.** The text does not catalog all of the inaccuracies in Remington's filings. Among other things, the schedules did not include Remington's cause of action against the FDIC among its assets and its statement of affairs did not disclose Remington's then-pending litigation with that agency.

approved retention as debtor's counsel be-cause he anticipated that his services would not be required beyond the § 341 meeting. He stated, "I'm not looking for attorney's fees. I just filed [the petition] to get them here into court so they could do their deal." (Transcript of 1/3/94 § 341 meeting, page 15, lines 13–15).

The UST's counsel told Cioffi that the debtor would have to retain new counsel. Cioffi responded that it would be done. (Transcript of 1/3/94 § 341 meeting, page 19).

### 4. Substitution of Counsel and the U.S. Trustee's Motion.

On January 11, 1994, in accordance with applicable local rules, Attorney Ernest V. Begin replaced McKenna as debtor's counsel. The UST then filed this motion seeking fee disgorgement and Rule 9011(a) sanctions.[6]

### Discussion

### 1. McKenna's Futile Defensive Gambit.

At the outset, Attorney McKenna's vain attempt to deflect scrutiny of his own con-duct by impugning the motives and integrity of the UST's attorney, Sheryl Serreze, Esq., deserves brief comment. Citing Attorney Serreze's prior employment by Hinkley, Al-len & Snyder at a time when a member of that law firm made demand upon Remington on behalf of its mortgagee, McKenna charac-terizes the UST's motion for sanctions as Ms. Serreze's veiled attempt to aid her former employer.

Ms. Serreze's conduct not only comports with pertinent rules of attorney conduct,[7] it has been beyond reproach in all respects. Thus, I need not consider whether, if McKen-

na's allegations held water, he could douse the UST's motion.

### 2. Disgorgement of Fees.

 The UST asks this court to order Attorney McKenna to disgorge all fees paid to him by the debtor for bankruptcy repre-sentation. Without doubt, an order requir-ing disgorgement of fees may issue when, for example, legal fees are found to have been excessive, 11 U.S.C. § 329(b), see e.g., In re Grant, 14 B.R. 567 (Bankr.S.D.N.Y.1981); In re Hill, 5 B.R. 541 (Bankr.C.D.Ca.1980); when lack of disinterestedness or other fac-tors disqualify counsel, see e.g., In re John B. Love, 163 B.R. 164 (Bankr.D.Mont.1993); In re Granite Sheet Metalworks, Inc., 159 B.R. 840, 845 (Bankr.S.D.Ill.1993); In re Hatha-way Ranch Partnership, 116 B.R. 208, 219–220 (Bankr.C.D.Ca.1990); as a sanction for violation of the Code's strict disclosure re-quirements for professionals see, e.g., Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir.1994); In re Saturley, 131 B.R. 509 (Bankr.D.Me. 1992); or as a sanction for violation of Rule 9011, In re Meyers, 169 B.R. 273 (Bankr. D.R.I.1994); cf. Lancellotti v. Fay, 909 F.2d 15, 19 (1st Cir.1990) (trial court has wide discretion to impose appropriate sanction for rule violation).

Here a disgorgement order cannot issue, whether or not McKenna's conduct might otherwise warrant it. He received no fees from or on behalf of Remington. Thus, we must consider what, if any, other action is appropriate.

### 3. Rule 9011 Sanctions.

The UST's request for affirmative sanc-tions under Rule 9011(a)[8] rests on two

---

**6.** The motion also sought dismissal of Reming-ton's Chapter 11 case. In the course of hearings to consider the dismissal motion, Remington agreed to the appointment of a Chapter 11 trust-ee, under whose stewardship the case continues.

**7.** Rule 1.11 of the Rules of Professional Conduct, as incorporated into the Rhode Island Supreme Court Rules and applicable in the bankruptcy court by virtue of R.I.Local Bankr.R. 3 and U.S. District Court for the District of Rhode Island Local Rule 4(d), governs conflicts of interest where a lawyer, formerly in private practice, commences work for a government agency.

Subsection (d) provides that "[e]xcept as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not ... participate in a matter in which the lawyer par-ticipated personally and substantially while in private practice or nongovernmental employ-ment...." (Emphasis added). No evidence suggests that Ms. Serreze was personally, let alone substantially, involved in matters affecting Remington while she was at her former firm.

**8.** Fed.R.Bankr.P. 9011(a) provides that:
Every petition, pleading, motion and other pa-per served or filed in a case under the Code on

grounds. First, it asserts that McKenna's "execution of the petition and the Rule 2016(b) Statement violate[d] Rule 9011 ... because no competent attorney in Mr. McKenna's situation could have believed that the ... statement and the petition were both factually correct when filed, because they contain conflicting information...." Second, it contends that McKenna's execution of Remington's Chapter 11 petition as debtor's counsel was accomplished with an "improper purpose" within the meaning of the rule. I conclude that the latter ground does constitute a Rule 9011 violation, although, taken alone, the former ground does not.

### a. *Reasonable Inquiry.*

The UST argues that, given the patent inconsistencies between McKenna's Rule 2016(b) statement and the information in Remington's statement of financial affairs, McKenna failed reasonably to inquire into the factual accuracy of the documents he signed. McKenna concedes that neither Remington's statement of affairs nor his own 2016(b) statement is accurate, but argues that the errors were inadvertent and, ultimately, of no consequence.

Interpreting Fed.R.Civ.P. 11 (which remains substantively identical to Fed.R.Bankr.P. 9011 in this regard, notwithstanding amendments effective December 1, 1993), the Supreme Court has described the "reasonable inquiry" requirement as follows: "A signature certifies to the court that the signer has ... conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well-grounded in both...." *Business Guides v. Chromatic Commercial Enterprises*, 498 U.S. 533, 542, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1990); *see In re Narragansett Clothing Co.*, 143 B.R. 582, 584 n. 2 (Bankr.D.R.I.1992); *see also* 5A C. Wright and A. Miller, *Federal Practice and Procedure* § 1335, pp. 57–58 (2d ed. 1990).[9]

■ But the basis for imposing sanctions must be the documents McKenna executed and for which he can be held responsible. Remington's bankruptcy petition itself contains no information that contradicts ˙the Rule 2016(b) statement. And Rule 9011's plain language disposes of the UST's attempt to hold McKenna responsible for inaccuracies in Remington's statement of financial affairs. Unless the court orders otherwise, a debtor's lists, schedules and statements must be signed by the debtor. *See* Fed.R.Bankr.P. 1007(b)(1), 1008; Official Forms 2, 4, 6 & 7. Counsel neither signs them nor certifies their accuracy. Fed.R.Bankr.P. 9011(a), *supra* note 8; *see In re Saturley*, 131 B.R. at 519 (attorney does not verify the schedules and statements).

■ An inaccurate, incomplete or misleading Rule 2016(b) statement, on the other hand, may lead to Rule 9011(a) sanctions. *In re Ostas*, 158 B.R. 312, 319–320 (N.D.N.Y. 1993). Candid and comprehensive disclosure is expected and enforced. *Rome v. Braunstein*, 19 F.3d at 59; *In re Saturley*, 131 B.R. 509, 517 (Bankr.D.Me.1991); *see In re Martin*, 817 F.2d 175, 182 (1st Cir.1987); *see also, e.g., In re Film Ventures International, Inc.*, 75 B.R. 250, 252 (9th Cir. BAP 1987); *In re Kendavis Industries, Inc.*, 91 B.R. 742, 759 (Bankr.N.D.Tex.1988); *In re Kero–Sun, Inc.*, 58 B.R. 770, 777–778 (Bankr.D.Conn. 1986).[10] Sanctions may issue for disclosure

---

behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.... If a document

is signed in violation of this rule, the court ... shall impose on the person who signed it, the represented party, or both, an appropriate sanction....

9. "The rule require[s] litigants to 'stop-and-think' before initially making legal or factual contentions." Fed.R.Civ.P. 9011 Advisory Committee Notes to 1993 Amendments, subdivisions (b) and (c).

10. The usual consequence of disclosure defaults is denial of compensation. *In re Martin*, 817 F.2d at 183; *In re Saturley*, 131 B.R. at 517. That possibility does not exist in this case, as Attorney McKenna has withdrawn from the case

violations whether or not they harm the estate. *See, e.g., Rome v. Braunstein,* 19 F.3d at 62; *In re Saturley,* 131 B.R. at 517.

McKenna's Rule 2016(b) statement does not exhibit the type of disclosure deficiency that commonly leads to sanctions. It shows a $500.00 payment that was never made. The $3,200.00 paid McKenna by Cioffi was for services personal to him. It was not paid by or on behalf of Remington and, therefore, was without the scope of Rule 2016(b) disclosure.[11]

The error in McKenna's statement epitomizes his sloppy, slapdash work.[12] However, I need not decide whether such an erroneous disclosure would alone warrant sanction. Rather, I will view it as part of the body of evidence pertinent to the purpose underlying McKenna's execution of Remington's bankruptcy petition.

### b. *Improper Purpose*

■ In addition to its "reasonable inquiry" requirement, Rule 9011 requires that sanctions be imposed upon one who signs a "petition, pleading, motion or other paper" that is "interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case." The UST contends that Attorney McKenna signed Remington's petition without the intention to be its *bona fide* reorganization counsel, thereby misleading the court and parties-in-interest by creating the impression that Remington had initiated a *bona fide* reorganization.

McKenna knew that as a corporation, Remington would have to have counsel at every stage of the proceedings, beginning with the filing of the petition. *In re Bellerive Springs Building Corp.,* 127 B.R. 219 (Bankr.E.D.Mo.1991). *See also In re Las Colinas Dev. Corp.,* 585 F.2d 7 (1st Cir.1978), *cert. denied,* 440 U.S. 931, 99 S.Ct. 1268, 59 L.Ed.2d 487 (1979) (corporations must be represented by counsel in all court proceedings). At the § 341 meeting, responding to the UST's observation that Remington "is a corporation so it will require representation by counsel," Attorney McKenna rejoined, "I know it's a corporation and that's the only reason I'm here." (Transcript of 1/3/94 § 341 meeting, page 15, lines 2–5).

McKenna also knew that his $25,000 claim against the estate would disqualify him from representing Remington in Chapter 11. *See, e.g., In re Hub Business Forms,* 146 B.R. 315, 320 (Bankr.D.Mass.1992); 1 *Norton Bankruptcy Law and Practice 2d* § 25.3 (1994) ("A majority of courts have found that if the professional's claim arises from services unconnected to the bankruptcy case, employment is inappropriate"). *Cf. In re Martin,* 817 F.2d at 182 ("It's left to the courts to decide whether attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action").[13]

and has asserted all along that he never intended to seek compensation as debtor's counsel. The fact that McKenna will not seek compensation does not, as he suggests, immunize him from the consequences of rule violations that would usually lead to fee disallowance.

11. *See supra* note 4; 11 U.S.C. § 329(a) (setting forth scope of required disclosures). This is not to say, however, that disclosure of McKenna's representation of Cioffi and Remington, as well as that his brief period of "ownership" of Remington shares, would not have been required had he sought to be retained as debtor's counsel in the Chapter 11 case. *See* 11 U.S.C. § 101(14)(E) (defining "disinterested person" as one who "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor"); Fed.R.Bankr.P. 2014(a) (application for employment shall disclose and shall be accompanied by verified statement of

"all ... connections with the debtor, creditors, any other party in interest ..."). *See also* discussion *infra* at note 13.

12. McKenna's contention is that the $500.00 was a typographically inaccurate reference to the $600.00 filing. That contention is incredible. The filing fee never passed through McKenna's hands. And it is hard to believe that, notwithstanding McKenna's constant inattention to the form and substance of Remington's bankruptcy filings, he got the Rule 2016(b) disclosure exactly right, but for the slip of a finger at the word processor.

13. Section 327 of the Code, which governs the employment of professional person, requires that debtor's counsel "not hold or represent an interest adverse to the estate, and [be] disinterested persons." Although § 327(a), by its terms, concerns representation of "the trustee," § 327(a) is applicable to attorney's appointed to assist Chap-

Attorney McKenna never intended to provide Remington continuing representation in Chapter 11. When the UST asked him whether he was willing to waive his $25,000 claim in order to be appointed counsel for the debtor, McKenna responded "I don't want to be employed." (Transcript of 1/3/94 § 341 meeting, page 14, line 21). When questioned further regarding whether he would represent Remington, McKenna commented, "I hope not. I hope this is the last time you'll see me." (Transcript of 1/3/94 § 341 meeting, page 14, line 24).

■ Attorney McKenna's involvement in this case presents two possibilities. The first is that he knew that Remington was not going to reorganize, and would therefore not need reorganization counsel. If that were the case, then the petition was filed for an "improper purpose." While it is not improper to file a Chapter 11 petition in an attempt to delay a creditor, it is essential that the debtor intend to make a legitimate effort at reorganization. *See, e.g., In re Aurora Investments Inc.*, 144 B.R. 899, 901 (Bankr. M.D.Fla.1992) ("[T]hese debtors had no intention of filing plans of reorganization as stated in the petitions and . . . neither of the petitions were filed to achieve a legitimate goal. Instead, they were filed for an improper purpose . . ."); *In re King*, 83 B.R. 843, 847 (Bankr.M.D.Ga.1988).

■ A court may conclude that the debtor has no demonstrable intent to reorganize upon examining the totality of the circumstances surrounding the filing. *In re Mer-*

*genthaler*, 144 B.R. 632, 639 (Bankr.E.D.N.Y. 1992) (addressing improper purpose in filing chapter 13 petition, citing *Baker v. Latham Sparrowbush Assoc. (In re Cohoes Industrial Terminal, Inc.)*, 931 F.2d 222, 227 (2nd Cir. 1991)). Cioffi's and McKenna's comments at the § 341 meeting as well as the evidence received at the hearing on the UST's motion demonstrate that Remington's petition was filed without the intention to reorganize. It was filed for the purpose of delaying the foreclosing mortgagee in order to enable Craig Raposa, an insider, to leverage a settlement under which he would succeed to either the mortgage or to Remington's title free of the mortgage.

That Remington had no intention to reorganize is also evidenced by the carelessness and inattention with which the schedules, statements, petition and Rule 2016(b) statement were prepared and by McKenna's unthinking execution of them. McKenna uncritically provided his professional license to get Remington through the bankruptcy door so that the § 362 stay could be brought to bear in Raposa's negotiations with Remington's mortgagee.

The alternative would be to conclude that Remington actually intended to reorganize. In that case, immediate retention of qualified reorganization counsel would be imperative. If exigent circumstances had compelled Remington's rapid-fire filing, and if no other attorney was available to assist in commencing a timely reorganization case, McKenna would not have been free to file the petition and bide his time. It would have been improper

ter 11 debtors in possession. 11 U.S.C. § 1107(a). *In re Martin*, 817 F.2d 175 (1st Cir. 1987); *see also In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1284 (5th Cir.1983). An attorney is not "disinterested" if, among other things, he or she is a creditor, an equity security holder, or an insider of the debtor. 11 U.S.C. § 101(14)(A).

Here the important point is that, at the time of filing and at the § 341 meeting, McKenna considered that his claim would foreclose his ongoing representation of Remington. He now tries to avoid the consequences by pointing out that the rule articulated in *In re Martin*, 817 F.2d at 182–183, is a flexible one. *See also In re Westwood Homes*, 157 B.R. 182, 183 (Bankr.D.Me. 1993); *In re Chestnut Hill Mortgage Corp.*, 158 B.R. 547 (Bankr.D.Ma.1993).

The circumstances of *Martin* in which, on the date of filing attorneys owed fees for prepetition

services, may nevertheless qualify to serve as debtor's counsel are a far cry from those presented here. Of course, the question of "disinterestedness" requires case-by-case consideration. *Martin*, 817 F.2d at 182. And the facts of this case, in which McKenna was owed a substantial sum for services unrelated to the events precipitating the Chapter 11 filing, are a clear case for disqualification. *In re HUB Business Forms*, 146 B.R. at 319–320 (where the obligation to the professional was incurred with respect to matters wholly unrelated to the bankruptcy filing, *Martin* carries little weight; such professionals are not disinterested within the meaning of § 327(a)); *see also In re Siliconix, Inc.*, 135 B.R. 378 (N.D.Cal.1991) (accounting firm holding large pre-bankruptcy claim not disinterested).

**18**

for him knowingly to continue a charade, waiting until the court, the UST or some other party called his bluff.

In any view, McKenna signed Remington's petition with an improper purpose in violation of Fed.R.Bankr.P. 9011. He signed as counsel to a Chapter 11 debtor he did not intend to represent (and knew he could not represent).

Since McKenna violated Rule 9011, I must impose a sanction. *Business Guides, Inc. v. Chromatic Communications Ent., Inc.,* 498 U.S. at 543, 111 S.Ct. at 928; *see Lancellotti v. Fay,* 909 F.2d at 19; *In re D.C. Sullivan Co., Inc.* 843 F.2d 596, 597 (1st Cir.1988); *In re Anderson,* 128 B.R. 850 (D.R.I.1991).

### c. *Appropriate Sanction*

▮ I must fashion a sanction appropriate to the circumstances. *Lancellotti v. Fay,* 909 F.2d at 20; *Anderson v. Beatrice Foods Co.,* 900 F.2d at 394 (the rules "place virtually no limits on judicial creativity"). It may be monetary or non-monetary. *See e.g., Clark Equipment Co. v. Lift Parts Manufacturing Co., Inc.,* 972 F.2d 817, 819 (7th Cir. 1992).

▮ "The imposition of a Rule 11 sanction usually serves two main purposes: deterrence and compensation...." *Navarro–Ayala v. Nunez,* 968 F.2d 1421, 1426 (1st Cir.1992) (citations omitted). A monetary sanction aimed at deterrence is appropriate only when the amount of the sanction "falls within the minimum range reasonably expected to deter the abusive behavior." *Id.* (citations omitted).

In this case, the primary objective is deterrence. The UST does not argue that it or any other party should be "compensated" for enduring the consequences of McKenna's conduct. I see no such need.

I conclude that a modest monetary sanction will serve to underline the seriousness with which this court views Attorney McKenna's conduct and, more importantly, that such a sanction will serve as a meaningful deterrent to such conduct in the future.

### *Conclusion*

For the reasons set forth above, Attorney Keven A. McKenna shall pay the sum of $1,000.00 to the clerk of the court within fifteen days from the date of the separate order accompanying this memorandum.